(Decided 15th March, 1888.)

___

The Baltimore and Ohio Railroad Company *vs.* Laura Patterson, and others.

*Construction of a Devise—"Heirs of the Blood of the Father"—Acts of 1786, ch. 45, and 1820, ch. 191, and Code, Art. 47, sec. 1.*

A testator, who died in 1835, disposed by his will of certain real estate as follows : " I give and devise " said lots " to my son Edward for life," and after his decease " to all and every the child and children of him, my said son Edward, in equal proportions, and equally to be divided between them, and to the heirs of such child or children of the blood of their father, forever; and, for default of such child or children at the death of my said son Edward," he devised the property over to his other sons for life, and upon their death to their children, and " to the heirs of such child or children of the blood of their father, forever." The testator's son Edward died in 1865, leaving several children, and the question arising as to what estate they took in the property so devised, it was HELD :

That under the Descent Laws of Maryland, (Acts of 1786, ch. 45, and 1820, ch. 191, and Code Art. 47, sec. 1,) the estate given to said children, whether a " qualified fee " or a " fee simple conditional," was converted into an unqualified fee simple.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Hugh L. Bond, Jr.,* for the appellant.

*\*Arthur W. Machen,* for the appellees.

MILLER, J., delivered the opinion of the Court.

The property, the subject of contract between these parties, and the title to which it is the object of this case stated to have settled, consists of two lots on Whetstone Point in the City of Baltimore, which were disposed of by the tenth paragraph of the will of William Patterson, who died in 1835, thus:—

"I give and devise" said lots "to my son Edward" for life, "and after his decease, I give and devise" the same "to all and every, the child and children of him, my said son Edward, in equal proportions and equally to be divided between them and to the *heirs* of such child or children *of the blood of their father forever,* and for default of such child or children at the death of my said son Edward" he devises the property over to his other three sons for life, and upon their death to their children and "to the *heirs* of such child and children *of the blood of their fathers forever.*"

Edward Patterson died in 1865 leaving several children, and the question is what estate these children took in this property? The Court below by the decree appealed from decided they took a fee simple, and after a careful consideration of the question we are of the same opinion.

Lord COKE says, if a man giveth lands to a man to have and to hold to him and his heirs *on the part of his mother,* yet the heirs of the part of the father shall inherit, for no

---

*The Court declined to hear an argument on behalf of the appellees.

man can institute a *new kind of inheritance not allowed by the law*, and the words "of the part of his mother" are void ; and if a man giveth lands to a man to him and to his *heirs male* the law rejecteth this word "males," because there is no such kind of inheritance. *Co. Litt.*, 13*a*. He is here undoubtedly speaking of a *common law* grant or conveyance, for in another place he says, if a man by his last will devise lands and tenements to a man and to his heirs males, this by construction of law is an estate-tail, the law supplying the words "of his body." *Co. Litt.*, 27*a*. Another passage in this connection, much relied on by counsel, is this, "and therefore if lands be given to the son and to *his heirs of the body of his father*, the son cannot take as heir of the body of his father, because the grant is to him and to *his* heirs and consequently he hath a *fee simple.* *Co. Litt.*, 27*a*. Counsel have argued as if the words "heirs of the *body* of the father" mean the same thing as "heirs of the *blood* of the father" but to this we cannot agree. The former include only heirs in the descending line, while the latter include heirs both in the ascending and descending line, and in our opinion mean the same thing as *heirs on the part of the father.* Mr. Preston calls such an estate a *qualified* fee. *Preston on Estates*, 448. But we think it may well be classified as a "fee simple conditional" within the purview of our descent laws. *Act of* 1786, *ch.* 45, *Act of* 1820, *ch.* 191, and *Code, Art.* 47, *sec.* 1. In Plowden it is said that at common law before the Statute *de donis* there were but two estates of inheritance ; the one a fee simple absolute, as where a man hath lands to him and to his heirs generally, and the other a *fee simple conditional*, as where a man hath lands given to him and to his heirs of his body, thus putting under the latter head what afterwards became a fee tail general. 1 *Plowden*, 241. KENT speaks of qualified, base or determinable fees, and uses the terms as interchangeable, gives the same definition of a *conditional fee* as that given in Plowden, and in

speaking of the restriction upon alienation in the case of a qualified or determinable fee, says the determinable quality of the estate follows a transfer of it. 4 *Kent's Com.*, 9 to 11. Preston also says a qualified fee confers only a limited power of alienation, entitling the owner to give an interest of the same extent and continuance only in another person that it would be in itself, so that the estate will, notwithstanding the transfer, be determinable, and into whosesoever hands it shall come will cease on a failure of those heirs to whom on the creation of the qualified fee the limitation is made. *Preston on Estates*, 460. In the note by Mr. Alexander to the *Statute de donis*, in which the Maryland decisions on this subject are collected and ably reviewed, he defines a "fee simple conditional," one which restrains the fee to some particular heirs, exclusive of others, as to the heirs of a man's body or to the heirs male of his body. *Alex. British Statutes*, 91.

An estate like the one created by this will "to the heirs of the blood of the father," or to heirs *ex parte paterna*, is an estate limited to a class of heirs, but to a class more numerous than those in an estate-tail general, and therefore would probably be of longer duration. It may continue for many generations, hampered all the while with this restricted power of alienation, and then cease. Such an estate, whether called a "qualified fee," or a "fee simple conditional," is clearly within the mischiefs which it was the object of the descent laws to remove. The purpose of those statutes as declared in the preamble to the Act of 1786, was to abolish the law of descents which originated with the feudal system and military tenures, because it was contrary to justice and ought to be abolished, and we are clearly of opinion that by the operation of these descent laws this estate has been converted into an unqualified fee simple. Nor can we discover in sec. 28, Art. 47, of the Code (which is a codification and re-enactment of the 6th section of the Act of 1820), anything which saves

such an estate as this, or authorizes its creation now. Clearly it cannot save an estate-tail general or a "fee simple conditional," or an estate of any other description which by the *first* section of this Article is made a fee simple. We have said this estate comes within the operation of the first section, and we adopt what is said on this point by counsel for appellee in his brief, to the effect that it would be most unreasonable to suppose that a law which sets free lands limited in tail and gives them the qualities of fee simple, should make it possible for a testator by a devise like this to make the land, the subject of it, more inalienable than any lands held in fee-tail ever were.

*Decree affirmed.*

(Decided 15th March, 1888.)