## HELEN J. G. REILLY et al. *vs.* WILLIAM H. BRISTOW, Extr. of FREDERICK H. GRIFFIN et al.

*Construction of a Will—Contingent Remainders—Partial Intestacy.*

A testator devised the income of his estate to be divided equally between his son and his daughter Annie until his other daughter, Helen, became a widow, when she was to share therein. If either the son or Annie should die, then the income was to be divided between the son or daughter surviving and the daughter Helen. "Then whenever either of my last two children die then in that case all the * * income * * to go to the last of my aforesaid children that remains alive * * then after all my aforesaid children die then in that case all my aforesaid estate * * and net income to go to and be divided between the children the lawful heirs of my aforesaid children the lawful heirs of my aforesaid children to receive and be allowed and paid what would have been their parent's share." Both the testator's son and his daughter Annie died without issue leaving last wills disposing of their property. The testator's daughter Helen had three children, all of whom died intestate and without issue. The said daughter Helen is still living and

also her husband. *Held*, that the testator's grandchildren who were living at the time of the testator's death did not take vested remainders which passed under their wills, but that the daughter Helen, as sole surviving life tenant, is entitled to the income of the property for life and the remainder therein is contingent and cannot become vested, unless there are living at her death grandchildren of the testator; that if the daughter Helen dies without leaving children, there will be an intestacy as to the remainder which will then vest in the heirs-at-law of the testator, and in that event will pass, one-third under the will of his son, one-third under the will of his daughter Annie and one-third under the will of his daughter Helen, or, if she leaves no will, then to her heirs; that if the daughter Helen dies leaving a child, then one-third interest of the remainder will vest in such child, but there will be an intestacy as to the remaining two-thirds of said remainder, which will then vest in the heirs-at-law of the testator who were living at his death.

*Decided April 2nd, 1907.*

Appeal from the Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Michael A. Mullin*, for the appellants.

*Albert C. Ritchie* (with whom was *Stuart S. Janney* on the brief), for the appellees.

PEARCE, J., delivered the opinion of the Court.

This case involves the construction of the will of John A. Griffin of Philadelphia, Pa., who died in September, 1902.

The clause here in question is as follows, the punctuation being exactly as it appears in the record, and that being as we are informed by counsel, just as it appears in the original will: "I give, devise, bequeath and desire that all the dividends, interest, rents and net income derived from my aforesaid estate or property shall go to and be divided equally between my son Frederic Hintze Griffin and my daughter Annie Hintze Griffin until my daughter Helen Julia Griffin Reilly wife of Colonel James William Reilly United States Army, becomes a widow, whenever my said daughter Helen Julia Griffin

Reilly becomes a widow then in that case all the said dividends, interests, rents and net income derived from my aforesaid estate or property to be divided equally between my son Frederic Hintze Griffin, my daughter Annie Hintze Griffin, and my daughter Helen Julia Griffin Reilly, if either my son Frederic Hintze Griffin or my daughter Annie Hintze Griffin die then in that case all the said dividends, interest, rents and net income derived from my aforesaid estate or property to be divided equally between my aforesaid son or daughter that remains alive and my daughter Helen Julia Griffin Reilly, then whenever either of my last two children die then in that case all the said dividends, interest, rents and net income derived from my aforesaid estate or property to go to the last of my aforesaid children that remains alive as long as my said child lives then after all my aforesaid children die then in that case all my aforesaid estate or property and dividends, interest, rents and net income derived therefrom to go to and be divided between the children the lawful heirs of my aforesaid children the lawful heirs of my aforesaid children to receive and be allowed and paid what would have been their parents share of my aforesaid estate or property, dividends, interest, rents and net income derived therefrom."

Frederic Hintze Griffin died January 1st, 1905, unmarried and without issue, leaving a last will and testament by which he made certain bequests and devises and made Wm. H. Bristow, one of the appellees, his executor.

Annie Hintze Griffin died March 1st, 1905, unmarried and without issue, but leaving a last will and testament by which she devised and bequeathed all of her property to said Helen Julia Griffin Reilly. Mrs. Reilly and her husband are both still living.

Mrs. Reilly has had three children. The eldest, Henry Hintze Reilly, died intestate and without issue on June 23rd, 1892, in the lifetime of the testator John A. Griffin, Wm. Griffin Reilly and Frederick Hamilton Reilly, the two other children of Mrs. Reilly, both survived the testator, John A. Griffin, but have both since died intestate and without issue,

the former on January 21st, 1904, and the latter on January 11th, 1904. The property in dispute in this case consists exclusively of the proceeds of a policy of fire insurance upon a house in Baltimore destroyed by fire, on Feby. 7th, 1904, which house had been the property of the wife of John A. Griffin and was devised by her to him. The policy of insurance was originally issued to Mrs. Griffin, was renewed from time to time in her life, and after her death in 1900, was renewed "for acct. of estate of Henrietta H. Griffin for three years to May 6th, 1906," and so stood at the time of the fire.

The Insurance Company recognized its liability for the loss and filed a bill of interpleader against the claimants, for its protection. Under this bill a decree was passed directing payment into Court of the proceeds of the policy, less the costs paid by the insurance company and a fee allowed its solicitor, and the claimants were required to interplead. Upon this decree the usual proceedings were had, it being conceded by all concerned that the renewal of the policy in the terms stated, simply indicated that the loss was payable to those who were entitled to the property assured. Upon hearing, the Circuit Court No. 2 passed a decree appointing the Baltimore Trust and Guarantee Company, trustee, to receive the fund in question, and to hold the same in trust for Mrs. Reilly during her life, and upon her death leaving no child or children surviving her, to distribute one-third thereof under the will of Frederic H. Griffin, one-third under the will of Annie H. Griffin, and one-third under the will of Mrs. Reilly, or if she leaves no will, then this one-third to the heirs at law of Mrs. Reilly; and if Mrs. Reilly dies leaving a child or children surviving her, then to distribute one-third to such child or children, and to distribute the remaining two-thirds as follows, viz., one-third under the will of Frederic H. Griffin, one-third under the will of Annie H. Griffin, and one-third under the will of Mrs. Reilly, or if she leaves no will, then this one-third to her heirs at law, and from that decree Mrs. Reilly and her husband have both appealed.

This decree proceeds upon the theory that Mrs. Reilly is

entitled as sole surviving life tenant, to a life interest in the fund, which represents real estate, and that the remainder therein is a contingent remainder which can never become vested unless there are living at Mrs. Reilly's death, children of the testator's three children heretofore named; that if Mrs. Reilly dies without leaving a child or children surviving her, (the other two children of the testator being now dead without issue) there will be an intestacy as to said remainder which will then vest in the heirs at law of John A. Griffin, who were living at his death, and in that event will pass, one-third under the will of Frederic H. Griffin, one-third under the will of Annie H. Griffin, and one-third under the will of Mrs. Reilly, or if she leaves no will, then to her heirs at law; and further that if Mrs. Reilly dies leaving a child or children surviving her, then a one-third interest in said remainder will vest in such child or children, but there will be an intestacy as to the remaining two-thirds of said remainder, which will then vest in the heirs of the testator who were living at his death and will in that event pass, one-third under the will of Frederic H. Griffin, one-third nnder the will of Annie H. Griffin, and one-third under the will of Mrs. Reilly, or if she leaves no will, then to her heirs at law.

The contention of the appellants is that the testator's two grandchildren living at his death took vested estates in the remainder of the testator's estate subject to the life estates given to his own children, and subject to the letting in of any after born children of the testator, and that upon their death intestate, the remainder under the Statute of Descents, then vested in their father, Gen. Reilly, as their heir at law.

The appellees on the other hand, contend that under the rule in Shelley's case, each of the testator's three children took a life estate in possession, and an inheritance in remainder, which latter, upon the termination of the last life estate, passes, under the wills of Frederic, Annie and Mrs. Reilly, one-third under each.

The argument of appellees counsel upon this contention was able and we have given it careful consideration.    It rests

for its authority mainly upon three cases from the Supreme Court of Pennsylvania, viz: *Mason* v. *Ammon*, 117 Pa. St. 127, *Sheely* v. *Neidhammer*, 182 Pa. St. 163, *Shapley* v. *Diehl*, 203 Pa. St. 566, and it must be conceded they afford proper ground for argument by counsel. In *Mason* v. *Ammon* the devise was to "said sister, and at her death to her child, children, or other lineal descendants," and the Court said, "It is admitted that whilst "child or children will not, *per se*, be construed to be words of limitation, yet when coupled with some other expression of testator showing that they were used as a *nomen collectivum*, signifying 'heirs of the body,' the rule in Shelley's case has been applied," and the Court, in that case laid hold of the words 'or other lineal descendants,' as indicating the nature of the estate intended to be given to the successors of said sister as one he meant they should take by descent from her. An illustration of the same process of reasoning is found in our own decisions in *B. & O. R. R.* v. *Patterson*, 68 Md. 606, in which this Court, speaking through JUDGE MILLER said, "Counsel have argued as if the words 'heirs of the *body* of the father' mean the same thing as 'heirs of the *blood* of the father' (the language of the devise in that case) but to this we cannot agree. The former include only heirs in the descending line, while the latter include heirs both in the ascending and descending line, and in our opinion mean the same thing as heirs on the part of the father."

In *Sheeley* v. *Neidhammer*, the devise was to one for life, and then "to his children or legal heirs." This was held to vest in the first taker an estate in tail, converted by the statute into an estate in fee simple. The Court said "The words 'legal heirs' are in this connection equivalent to descendants. It does not matter that this may defeat the testators intention. Such is the common result of the application of the rule in Shelley's case."

In *Shapley* v. *Diehl*, there was a grant to a son for life, then "to his children or heirs," and it was held to vest a fee in the son. The Court said, "Suppose he had omitted *children* and said *heirs* only. The precise case for the rule would have

been presented, yet the meaning would have been exactly the same, and the children would have come in as first in the line of inheritance." In all three of these cases it may be observed that the word *or* was employed, "children, *or* other lineal descendants," "children, *or* legal heirs," "children, *or* heirs," indicating alternate devises, to children if any, and if none, then "to other lineal descendants"—"to all legal heirs—to all heirs"—But in the case before us the alternative word, *or*, is absent.

There is no more doubt under the Maryland than under the Pennsylvania cases that where there is no expression to rescue the case from the application of the rule, it does not matter that the testator's intention may be defeated, as is clearly shown in *Smith* v. *Clark*, 49 Md. 106, 120, but the Courts of this State have always struggled against the application of the rule and have searched the will or deed for some inconsistent provision or word which would exclude its application. The case of *Fulton* v. *Harman*, 44 Md. 251, presents perhaps the strongest example of this effort. There the devise was of all the residue of testator's estate "to his son, George, during his natural life, and after his death, *the proceeds thereof* to be equally divided between all his George's lawful heirs," there being a subsequent provision in the will directing the executors to sell all his remaining real and personal property. The Court, CHIEF JUDGE ALVEY delivering the opinion, held, the rule in Shelley's case did not apply, and said, "As the words, *lawful heirs* are followed by words of partition and distribution inconsistent with the devolution of the estate by inheritance, the estate cannot be enlarged to a fee simple by force of the term *lawful heirs*; but the gift being of the proceeds to be divided in a manner specially prescribed, the terms of the gift must be construed as clearly indicative of an intent to give a life estate only to the son George, with a gift over to those who may be embraced within the term lawful heirs, as purchasers."

In the case now before us the words are "to go and be divided between the children the lawful heirs of my aforesaid children." The argument of appellees' counsel is that the ad-

dition of the words *lawful heirs* explains and enlarges the preceding word, *children*. This argument is legitimate and persuasive on first presentation, but does not reach the plane of conviction. It may be argued as plausibly, and with as much reason, that the word *children* restricts the meaning of the words lawful heirs. Children are embraced within the term lawful heirs. In the language of *Shapley* v. *Diehl, supra*, they come in "as first in the line of inheritance," but the word is not *per se*, descriptive of the whole line of lawful heirs. There is no magic in the mere collocation of words, and the construction of this clause cannot be controlled by the order in which these words are coupled. If the language had been "the lawful heirs, the children of my said children," the same argument now made by the counsel for the appellees, would support the contention that the rule does not apply, upon the ground that the latter words restrict the former, and that it is always the latter words which qualify the former, whether enlarging or restricting them. But this is not a rule of universal or imperative application, and depends upon whether, it will support, or defeat the intention of the testator as deduced from the whole will. Where, as here, there are two possible constructions, one of which would enlarge and the other would restrict the meaning of the word *children*, we think the spirit of our decisions requires us to adopt the restrictive construction which will give effect to the natural and primary meaning of the word, rather than to the arbitrary meaning placed upon it by an artificial rule of law.

The remaining question is whether the remainders to the children of the testator's children are vested or contingent. It is unnecessary to refer to the numerous authorities in Maryland that remainders will be held to vest at the death of the testator whenever it can be fairly done without doing violence to the language of the will, and that to make them contingent, there must be plain expressions to that effect, or such intent must be plainly inferrible from the terms used. All of these cases however distinctly recognize that whether the remainder is vested or contingent depends entirely upon the tes-

tator's intention, and that where he has indicated with reason-
able certainty his intention that it shall not vest until a partic-
ular time, it will not vest until that time arrives, and then only
in those who are in *esse*, and capable of taking at that time.

*Bailey* v. *Love*, 67 Md. 603, in which the remainder was
held vested, and *Straus* v. *Rost*, 67 Md. 465, in which it was
held contingent will suffice as examples of this recognition.

In the will before us there is no immudiate gift to the chil-
dren of the testator's children. After providing minutely for
the disposition of his property during the lives of all his chil-
dren, down to the last survivor of them, his children's children
are for the first time mentioned, as follows: "*then*, after all my
aforesaid children die, *then*, in that case, all my aforesaid estate
to go to and be divided between the children the lawful heirs of
my aforesaid children the lawful heirs of my aforesaid children,
to receive, and be allowed and paid what would have been
their parents share of my aforesaid estate."

The use and repetition of the word *then* in reference to the
children's children is conspicuous and significant.

In *Larmour* v. *Rich*, 71 Md. 369, the deed of trust under
consideration reserved a life estate to the grantor, and pro-
vided that upon the termination of that estate, the rents and
profits should go to his daughter, Mrs. Miller for her life,
"and from and immediately after her decease," that the prop-
erty itself should "*then descend to and become the property of
her children*, the issue of any deceased child to take and have
the part to which the parent if living, would be entitled." The
Court emphasized the words italicised and said "Mrs. Miller's
death was fixed by him as the point of time at which the cor-
pus of the estate should descend to and become the property
of her children."

In *Cherbonnier* v. *Goodwin*, 79 Md. 57, the devise was in
trust "for Edward Goodwin during his life, and from and after
his death to be equally divided among all his children,"
and the question was whether a son of Edward who died
in his life had any interest in the fund to be divided on
Edward's death. It was held he had not, and the words

"from and after the death of Edward," in connection with a limitation over upon Edward's death without child or children, clearly indicated it was the intention of the testatrix to postpone the vesting until after Edward's death.

While it is unnecessary to go beyond our own cases appropriate reference may be made to the following, because of the close similarity of the facts. In *Hale* v. *Hobson*, 167 Mass. 397, the residue of the estate was devised in trust to pay certain annuities until the decease of the last survivor of the annuitants, the residue then to be equally divided among the testators grandchildren per stripes. The testator had grandchildren living at his death some of whom died during the life of the annuitants, and others survived all the annuitants. The grandchildren were held to take only contingent interests. The Court said "the scheme of the will indicates a contingent interest. It is more reasonable to suppose the grandchildren living at the time of distribution were intended than those living at testator's death. Again, there are no words of present gift."

In *Clark* v. *Camman*, 160 N. Y. 315, there was a devise of income in trust for the wife for life, and after her death to a niece Mary Ann for her life, and upon her death the principal sum to be equally divided among all her children and to their lawful representatives forever as tenants in common *per capita*, the issue of any child who may then be dead to take his or her deceased parent's share. The widow died in 1872. Mary Ann had two sons living at the testator's death, one died in 1870, and one in 1873, both without issue and intestate, the latter leaving his father as next of kin. The remainders were held contingent, the Court saying, "If futurity is annexed to the substance of a gift the vesting is suspended. The remainders were contingent and not vested for the reason that the persons to whom, or the event upon which the estate was limited to take effect, remained uncertain until the termination of the life estate and it follows that as there are no persons to take in remainder under the will the testator died interstate." This last point directly sustains the ultimate effect of the ruling of the Court below in this case.

In the matter of *Crane*, 164 N. Y. 71, the Court said, "Where the only gift is in the direction to pay, the bequest or devise is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift."

We discover no error in the decree of the learned Court, and it will therefore be affirmed.

> *Decree affirmed with costs to the appellees above and below.*