## ARTHUR E. POULTNEY *vs.* HARRIET FITZHUGH TIFFANY ET AL.

*Time of Vesting of Remainders After a Life Estate—Stare Decisis—Construction of a Will—Contingent Remainders.*

When an estate is given by will or deed to become the property of the donee after the termination of a preceding particular interest therein in another person, and the question arises as to when the estate vests in interest in the donee, and as to whether it passes to his heirs in case of his death before the cessation of the preceding estate, two of the established principles of construction are, *first,* that the law favors the early vesting of estates, and the Court will, as a general rule, adopt the earlier period of vesting, when there is more than one mentioned, if not in conflict with the apparent intention of the testator; and, *second,* that notwithstanding the preference of the law for early vesting, the testator has the right to fix the period of vesting at his pleasure, and to make it depend

upon a contingency, and when he has done this with reasonable certainty, his wishes will prevail, and the estate will not vest until the happening of the contingency.

When the particular expressions or words by which an estate in remainder was created by a will have been construed by a decision of this Court, and a definite meaning attached to them, then in a subsequent case, where the language used in another will is in effect the same, the doctrine of *stare decisis* demands that the same construction be made.

A testator gave all of his property to a trustee to hold the same and to pay the net proceeds to his wife during her life, and from and after her death, "this trust shall cease, and the property shall then become the property of all my children, in equal shares or portions, and their respective heirs, executors, administrators and assigns, the child or children of any deceased child in all cases to take the share of the parent." Some of the testator's children died before the termination of the life estate. *Held,* that the remainders to the children did not vest during the life of the testator's widow, but that they all took contingent remainders dependent upon their surviving her; that in the event of the death of any child during her life leaving issue, such issue would be entitled to the share of its parent; that since those of the testator's children who died in the lifetime of the widow left no issue, the whole estate upon her death passes equally to the surviving children.

*Decided February 25th, 1910.*

Appeal from the Circuit Court of Baltimore City (LEHMAYER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Randolph Barton* and *Aubrey Pearre, Jr.,* for the appellant.

*William S. Bryan, Jr.,* for the appellees.

PEARCE, J., delivered the opinion of the Court.

This case requires the interpretation by the Court of the following language in the will of Thomas Poultney, Jr.: "After the payment of my just debts and funeral expenses, I give, devise and bequeath all my property, real, personal and mixed * * * unto my brother, Samuel Eugene Poultney, * * * in trust however, for the following uses and purposes, that is to say, in trust to hold the same * * * and to pay the net proceeds from time to time to my wife for and during the term of her natural life; and in trust that from and immediately after the death of my wife, this trust shall cease, and the property shall then become the property of all my children, in equal shares or portions, and their respective heirs, executors, administrators and assigns, the child or children of any deceased child in all cases to take the share of the parent."

This will was executed March 30th, 1882, and the testator died December 26th, 1903, leaving surviving him, his widow, Susan Meade Poultney, and the following children, viz, Arthur E. Poultney, the appellant, and Richard C. Poultney, children by a former marriage, who with McClellan Poultney, who died unmarried and without issue in his father's life, were the only issue of said former marriage, and Harriet Fitzhugh Poultney, now the wife of Herbert T. Tiffany, William D. Poultney and Nannie Poultney, now the wife of James P. Gorter, who with Nellie C. Poultney, who died in her father's life, unmarried and without issue, were the only issue of said second marriage. Richard C. Poultney never married, and died intestate in 1897, and Susan Meade Poultney died July 23rd, 1909, at which time, under the express terms of said will, said trust ceased.

The sole question presented on this appeal is: When did the estates devised by Mr. Poultney to his children vest in interest?

The appellant contends that these estates so vested at the death of the testator, subject to the life estate of Mrs. Poult-

ney, and subject also to be divested by death, during her life, in favor of the child or children of the one so dying.

Under this theory, as Richard C. Poultney died intestate, and without issue, Arthur E. Poultney would take his share of the real estate under Code, Art. 46, sec. 19, and so would now have two-fifths of the real estate, the children of the second marriage each taking one-fifth, while Richard's share of the personal estate would go equally to all the children of Mr. Poultney.

The appellees contend that the children took contingent remainders, dependent upon their surviving Mrs. Poultney, and that in event of the death of any child during her life, leaving children, that the contingent remainder of such child so dying vested in his or her child or children, and that no estate vested in interest in any child of Mr. Poultney during the life of Mrs. Poultney, and that consequently, upon her death, the whole estate goes equally to the four surviving children, and the lower Court so held, and passed a declaratory decree accordingly.

The question of when an estate shall vest in interest, where there is more than one period mentioned at which it would be possible for it to vest, is one which has long perplexed the Courts, and in reference to which there has been such great diversity and confusion of judicial opinion that it would be idle to attempt to reconcile all the cases even in any one jurisdiction.　Two fundamental principles of construction however have been firmly established in all jurisdictions administering the principles of the common law: first, that the law favors the early vesting of estates, and that the Courts will, as a general rule, where there is more than one period mentioned, adopt the earlier one, if this does not contravene the actual intent of the testator or donor, as deduced from the terms of the instrument; and second, that notwithstanding the preference of the law for early vesting, the testator or donor has the absolute right to fix the period of vesting at his pleasure, "and to make it depend upon a contingency, and when he has done this with reasonable certainty,

his wishes will prevail and the estate will not vest until the happening of the contingency." *Larmour* v. *Rich,* 71 Md. 369; and these rules are fully recognized by the counsel of both parties in this case.

While other cases are cited in both briefs, the appellees rely with special confidence upon *Larmour* v. *Rich, supra,* and the appellants, with equal confidence, rely especially upon *Cox* v. *Handy,* 78 Md. 108.

After a careful consideration of these cases, and of the principles upon which they are reposed, as well as the other cases cited in the briefs, we are of opinion, especially in view of the fact that the language of the will in this case is almost identical with that of the will and deed in *Larmour* v. *Rich,* that it must be held to be the controlling authority in this case, and we shall confine this opinion principally to an examination of the two cases mentioned above, with brief reference to some of the other cases cited. In *Cox* v. *Handy,* the testator devised certain property to his wife for life, and directed that after her death it shall be divided amongst my children, share and share alike, the child or children of any deceased child, to take the portion to which the parent, if living would have been entitled;" and it was held that a share of the property vested in each child who survived the testator, but if any such child should leave children at his death, his share was divested in favor of such children, but it was not divested by the death of the child in the lifetime of the tenant for life, without leaving children.

In that case, the testator mentioned his children *by name* in the will, and the Court adverts to that circumstance as indicating that the remainder was intended to be a vested remainder, and cites 1st *Preston on Estates,* 70, to show that when a remainder is limited to a person *in esse* and ascertained, to take effect, by words of express limitation on the determination of the preceding particular estate, that remainder is most clearly vested; and held that the language of the will in that case was not such as to leave room for construction, and therefore the remainders should be held to be

vested in the children of the deceased child by way of substitution, and in a deceased child leaving no children, as the will made no provision for substitution in such a case. This result was reached because the Court was of opinion that the testator had not clearly indicated his intention to postpone the vesting in interest to the latter of the two periods mentioned and the case was thus brought within the general rule favoring early vesting.

In *Larmour* v. *Rich, supra,* the language of the deed of trust was that "from and immediately after the decease of Rebecca A. Miller (the donor's daughter) *then* in trust that the said \* \* \* *ground and premises shall descend to and become the property* of the children the said Rebecca A. Miller now hath, and the child or children she may hereafter have, their executors, administrators and assigns, as tenants in common, equally, the issue of any deceased child, if any such issue there should be, to take and have the part, share or proportion only to which the parent of such issue would, *if living,* be entitled." The italics in this quotation are those of JUDGE McSHERRY who delivered the opinion of the Court, and who said in referring to the language of the will in that case, "that it was substantially the same, though there is some slight difference which does not however affect the question involved in this appeal." In deciding the construction of the language quoted above the Court said: *"Her death* (Mrs. Miller's) was fixed by him as the point of time at which the *corpus* of the estate 'should descend to and become the property' of her children. This is the obvious import of his words, apart from the subsequent contingencies in the same sentence, whereby he provided that his right heirs were to succeed to the estate in the event of these two contingencies happening. It was possible at the date of the deed, that either of these alternative contingencies might have occurred, but it was impossible, giving to his words their ordinary and natural signification, that the estate should 'descend to,' or become the property of' Mrs. Miller's children or their descendants, in any event until *her* death. Jacob Myers has, accord

ing to the plain import of these instruments indicated with *reasonable certainty,* the time at which he wished Mrs. Miller's one-seventh of the residuum of his estate under the will, and her one-half of the leasehold property under the deed to vest in her children, to 'become' their property; and that time, as he has fixed it, could never be reached during the life of his daughter Mrs. Miller. Hence if this intention is to prevail, no portion of his estate could possibly vest in any child of Mrs. Miller not living at Mrs. Miller's death."

The language of the instruments in that case cannot be discriminated from that of the present case, in so far as it relates to the question for decision in each case. In the former case the language is "shall descend to and become the property of the children of Rebecca A. Miller," and in the present case, "the property shall *then* become the property of all my children."

In this case, the death of the testator's wife, was fixed by him as the point of time at which the trust should cease, and at which the corpus of the estate should become the property of their children. "Giving to his words their ordinary and natural signification," in the language of JUDGE McSHERRY in *Larmour* v. *Rich,* "it was impossible that the estate should *become the property* of their children or their descendants until her death."

The value of that decision in determining the present case is found in the fact that it is an adjudication of the proper legal construction to be placed upon the exact language of the present case. In the brief of the late JUDGE FISHER in *Cox* v. *Handy,* he says: "In no Court has the proposition been more explicitly announced, and perhaps nowhere more frequently, that in the construction of wills, little assistance is to be derived from previous adjudications, *since the language employed in two wills, is rarely coincident,* and that the only value of authority in such cases is for the ascertainment of the principle of decision."

When however the language of two wills is coincident, and when that language has been stamped by the former decision

with a definite and exact meaning, and there is found in the latter case nowhere any ground for discriminating the one case from the other, a case is presented requiring the application of the rule *"stare decisis."*

JUDGE McSHERRY, who delivered the opinion in *Larmour* v. *Rich,* was the only Judge who participated in both these decisions, and no one, remembering the care and caution with which he reached conclusions as a Judge, and the steadfastness with which he adhered to a conclusion once deliberately reached, can for a moment suppose that in uniting in the opinion in *Cox* v. *Handy,* he receded from or qualified his opinion in *Larmour* v. *Rich,* or regarded these cases as in any manner conflicting, one with the other. It is apparent that he regarded the former as one in which the testator *had not* with reasonable clearness indicated his purpose to fix a later period for vesting of the remainder, and the latter as one in which the testator had so fixed the later period, and consequently the former case fell within the general rule of early vesting, and the latter within the exception to that rule.

*Larmour* v. *Rich* has been repeatedly cited with approval by this Court and among these cases we may refer specially to *Cherbonnier* v. *Goodwin,* 79 Md. 58, *Lee* v. *O'Donnell,* 95 Md. 309, and *Reilly* v. *Bristow,* 105 Md. 326.

When the intention of the testator has become apparent to the Court, it only remains to give it effect, unless it contravenes some fixed rule of law, and believing that the case of *Larmour* v. *Rich* has affixed to the language of the testator in this case the meaning and purpose ascribed to the same language in that case, it would serve no useful purpose to further prolong this opinion, and we shall affirm the decree for the reasons stated.

*Decree affirmed, half the costs above and below to be paid by each side.*