MELVILLE WILSON ET AL. *v.* MARIE EUGENIE PICHON.

SAFE DEPOSIT & TRUST COMPANY *v.* MARIE EUGENIE PICHON.

[Nos. 28, 29, January Term, 1932.]

*Decided April 4th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*A. Morris Tyson,* for the appellants.

*Brodnax Cameron,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

On this appeal the only question is whether a remainder is vested or contingent. The chancellor held it to have vested on the death of the testator.

It has been often declared by this court that the early vesting of estates is favored, and that "in doubtful cases the interest should be held to be vested rather than contingent, unless the instrument under consideration does not admit of such construction." *Miller, Construction of Wills,* 630. As stated in *Tayloe v. Mosher,* 29 Md. 443, 457: "Estates will be held to be vested wherever it can be done without doing violence to the language of the will, and to make them contingent there must be plain expressions to that effect, or such intent must be so plainly inferrable from the terms used to leave no room for construction." The test to be applied, as adopted in *Cox v. Handy,* 78 Md. 108, 121, 27 A. 227, 501, from *Moore v. Lyons,* 25 Wend. (N. Y.) 144, is: "For, where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainderman is *in esse* and ascertained, provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession." See *Lewis v. Payne,* 113 Md. 127, 137, 77 A. 321; *Cole v. Safe Dep. & Trust Co.,* 143 Md. 90, 95, 121 A. 911. As observed by Judge Bryan in *Cox v. Handy,* 78 Md. 108, 123, 27 A. 227, 228, 501, "These rules are intended to aid the courts in discovering the testator's meaning, but we fear there is some ground for the complaint of an eminent judge that on many occasions the testator's intention has been defeated by the application of rules which were intended to effectuate it." It was the confusion in the application of such simple

rules of construction that led Judge Pearce, in *Poultney v. Tiffany,* 112 Md. 630, 633, 77 A. 117, 118, to say: "The question of when an estate shall vest in interest, where there is more than one period mentioned at which it would be possible for it to vest, is one which has long perplexed the courts, and in reference to which there has been such great diversity and confusion of judicial opinion that it would be idle to attempt to reconcile all the cases even in any one jurisdiction." See *Miller, Construction of Wills,* 634, 654.

If, as so often said, the intention of the testator as expressed by him is the law of wills, then, logically, the controlling precedents, if there are any, should be other wills which have been construed by this court, compared with the will now before us for construction. This was the method followed by counsel in this case in the excellent briefs submitted by them, in which, however, they reached different conclusions.

The testator, David S. Wilson, died in 1882, leaving a will containing this provision: "And I hereby give to my said daughter the power by any testamentary paper, to devise and bequeath any part of the real and personal estate as the same may be held in trust for her at the time of her death, not exceeding one-half in value of said estate to and among my sons and their wives and descendants, and in such manner and proportions as she may think proper; or if she shall so desire she may devise and bequeath one-third of said half to such charitable and religious associations or corporations as she may prefer, and the entire remainder of said trust estate, including such portion of said half part as may not be devised and bequeathed by her as aforesaid, I devise and bequeath at her death to my sons James G. Wilson and William B. Wilson equally and absolutely, and to the descendants of either or both of them, if either or both shall die before her, such descendants to take *per stirpes* and not *per capita,* the shares to which its or their parent or parents would, if living, be entitled to."

The son James G. Wilson died June 1st, 1904, leaving surviving his widow, Josephine C. Wilson, who died March

12th, 1905, each leaving wills in favor of the other. They left one son, Marshall G. Wilson, who died June 4th, 1905, leaving a will whereby he devised and bequeathed all of his property to his wife, now Marie Eugenie Pichon, the appellee.

The son William, Bowly Wilson died February 14th, 1915, leaving surviving him a son, Melville Wilson, a daughter, Emma Wilson Rumbold, and a daughter, Virginia Marshall Wilson Randall. A daughter, Ella C. Wilson, died March 8th, 1914, intestate and childless. Any interest which William Bowly Wilson had in the trust estate was sold and conveyed by his trustee in bankruptcy, Harry N. Baetjer, to Jane Marshall Wilson, wife of William Bowly Wilson, who died before her husband, on June 15th, 1913, leaving a will by which she devised and bequeathed her estate to the Safe Deposit & Trust Company in trust for her four children, all of whom are living except Ella C. Wilson.

The daughter, Mary Bowly Wilson, for whom the property of her father had been held in trust under his will, died March 14th, 1931, without having exercised the power of appointment conferred by the will (*Roberts v. Roberts,* 102 Md. 131, 62 A. 161; *Swift v. Cook,* 133 Md. 651, 105 A. 869), and the question now arises, on the petition of the Safe Deposit & Trust Company and Melville Wilson, present trustees by succession and appointment, as to when the remainders became vested, a decision which will determine to whom the corpus of the trust estate is payable and in what proportions.

The appellants contend that it was the expressed intention of the testator that the remainders were contingent upon the brothers, James and William, surviving their sister, and that they, being the only remaindermen answering the description of the grandchildren entitled to take after the death of the life tenant, are entitled to the whole. The chancellor held for an immediate vesting, and it is from a decree accordingly that this appeal is taken.

The chancellor based his opinion on *Cox v. Handy,* 78 Md. 108, 27 A. 227, 501, while the appellants contend that the

decision should have been for a late vesting on the authority of *Demill v. Reid,* 71 Md. 175, 17 A. 1014; *Larmour v. Rich,* 71 Md. 369, 18 A. 702; *Reilly v. Bristow,* 105 Md. 326, 66 A. 262; *Poultney v. Tiffany,* 112 Md. 630, 77 A. 117, and *Lansdale v. Linthicum,* 139 Md. 155, 115 A. 116, in which it was held that the language of the wills or deed construed indicated an intention on the part of the testator or donor to delay the vesting of the estate, interest as well as possession, to the determination of the life estates. The view which this court subsequently took of the opinions in three of the cases so relied on by the appellants is stated in the language of the opinion by Judge Urner in *Lee v. Waltjen,* 141 Md. 450, at page 456, 119 A. 246, 248 (where the early vesting of the remainder was held), as follows: "In *Larmour v. Rich,* 71 Md. 369, 18 A. 702, the limitation in remainder was created by a provision that 'from and immediately after' the decease of the last survivor of seven life tenants 'then' the estate should 'descend to and become the property of their child, or children respectively.' The testator was held to have thus designated with reasonable certainty the time at which he wished the estate to 'become' the property of the remainder-men. In *Poultney v. Tiffany,* 112 Md. 630, 77 A. 117, the remainder clause provided that 'from and immediately after the death' of the life tenant, the trust should cease and the estate should 'then become the property' of the remainder-men equally. The ruling in that case followed the decision in *Larmour v. Rich, supra,* which the court distinguished from *Cox v. Handy, supra,* on the ground that in the latter case the testator had not clearly disclosed an intention to postpone the vesting in interest until the expiration of the life estate, and the rule in favor of early vesting could therefore be gratified. * * * In *Reilly v. Bristow,* 105 Md. 326, 66 A. 262, the use and repetition of the word 'then,' in reference to a disposition in remainder after the expiration of life estates, was held to have controlling significance."

In *Demill v. Reid,* 71 Md. 175, 17 A. 1014, 1015, the will was to a trustee for a life tenant, with remainder to a grandson, when he should die, then to his children, their heirs, etc.,

and, if he should die without leaving descendants surviving, then to the children of his son, Henry J. Willett. This was held to create an alternative limitation, termed "a contingency with a double aspect." By the will in *Lansdale v. Linthicum,* 139 Md. 154, 115 A. 116, 117, the testatrix, "upon the death" of her husband, gave, devised, and bequeathed the residue of her estate, "evenly and equally unto such of" her "three children (naming them), as shall be then living, and the surviving issue of any of them who shall have previously departed this life," and it was there held that the devise was not to the testatrix' children, but only to "such of them" as were living at the death of her husband and the "surviving issue" of "any of them who shall have previously departed this life," and that the intention of the testatrix to fix the death of her husband as the time for the vesting of the remainders is further indicated by that part of the same clause of the will which fixes the share the issue of a deceased child was to take as the share that would have gone to the parent "had he or she survived my said husband," and the vesting of the remainders is made to "depend upon a contingency" which the testator has expressed with "reasonable certainty"; citing as authority for this construction *Larmour v. Rich,* 71 Md. 369, 18 A. 702; *Poultney v. Tiffany,* 112 Md. 630, 77 A. 117; *Booth v. Eberly,* 124 Md. 22, 91 A. 767; *Demill v. Reid,* 71 Md. 175, 17 A. 1014; and *Small v. Small,* 90 Md. 550, 45 A. 190.

In all of these cases the opinion stressed the use of the word "survivor" applied to the remaindermen as indicating the intention of the testator or donor to have the estate vest at the determination of the life estate. A clearer expression of such an intention than in any of the cases named is contained in the case of *Ridgely v. Ridgely,* 147 Md. 419, 128 A. 131, 132, wherein, after devising three successive life estates, the estate was limited in "remainder to Ruxton Moore Ridgely, Genevieve Ridgely, and Gustave Ridgely, to be divided between them or the survivor or survivors of them absolutely," of which it was there said (page 423 of 147 Md., 128 A. 131, 132): "There is nothing in the context of the

will or in the facts that could admit of the withdrawal of this section \* \* \* from the rule that survivorship is referable to the period of division, and that this point of time is the death of the tenant for life in those instances where the testamentary disposition simply creates a previous life estate and a gift over to several or the survivors of them." See *Newlin v. Mercantile Trust Co.,* 161 Md. 622, 158 A. 51, 59. It was there manifest that there was no way of knowing in advance of the death of the life tenants those who were to take the remainder, and it has been uniformly held by this court that, when the remainders are to the survivors, the time of vesting shall await the termination of the particular estate, unless the expression of the testator's or donor's intention may otherwise appear.

In the will now up for construction there is no limitation of the remainder to a survivor, but the appellant contends that this is in effect the true meaning of the clause limiting the remainders. The disposition of what remains of the corpus of the daughter's life estate should be in accordance with the clause, "I devise and bequeath at her death to my sons, James G. Wilson and William B. Wilson, equally and absolutely and to the descendants of either or both of them, if either or both shall die before her, such descendants to take *per stirpes* and not *per capita,* the shares to which its or their parent or parents would if living be entitled." It may be that the testator gave no thought to the time when his sons would have the ownership or control of the corpus of his daughter's trust estate, or whether they could dispose of it or incumber it during the lifetime of the daughter. But, no matter what he might have thought, he is not here to tell us, and there is no alternative but to construe the will in accordance with his expressed intention, and that in the light of the decisions of this court, if we intend to adhere to them as precedents.

In the cases cited upon which the appellants rely, stress was laid upon the limitation of the remainders to the survivors of those named or designated as remaindermen as the chief determining factor for the decisions in those cases. For

instance, in the *Small* case, *supra,* the five children of the testator could not know until the death of the life tenant whether they would all survive him. In the Wilson will, the effect so far as the possession is concerned may be the same, but the expression of the testator's intention is different. David A. Wilson said that at his daughter's death he devised and bequeathed the corpus of his trust estate to his sons, James G. Wilson and William B. Wilson, "equally and absolutely and to the descendants of either or both of them, if either should die before her," they, in such event to take *per stirpes* the share which their parents "if living" would have been "entitled to." He did not leave the remainder to James and William, and the survivor of them; he left it to them, and then, in case either or both of them died before their sister, to his or their descendants. The limitation to the grandchildren was contingent upon the death of their father, but the only contingency in the way of their fathers, sons of the testator, was the death of the daughter, an event which, though uncertain in point of time, was certainly to happen, and, without any other contingency, the devise to the sons has the necessary attribute of a vested remainder, and, if vested in them, then it continued to be vested until reduced to possession. As said in *Dulany v. Middleton,* 72 Md. 67, 75, 19 A. 146, 149: "The contingent event provided for in the will, of the death of the devisee and legatee for life without leaving issue, and the limitation over of the property thereon, does not, as contended on the part of the appellants, render the gift or devise to the children of such devisee or legatee contingent, and forms no ground for postponing the vesting of the interest devised." *Lee v. Waltjen,* 141 Md. 450, 453, 119 A. 246.

The will in the case of *Cox v. Handy,* 78 Md. 108, 27 A. 227, 501, so resembles the will here before us as to make this construction a repetition of the decision in that case, and, inasmuch as there has been no disposition to abandon or qualify it, there is no reason why the rule there applied should not be followed here. In *Cox v. Handy,* the will provided that, after the death of the life tenant, the property "shall be sold

if necessary for equal partition, or, if the same can be accomplished without a sale, shall be divided amongst my children, share and share alike, the child or children of any deceased child to take the portion to which the parent, if living, would have been entitled." This court there held the children of the testator took vested remainders. It was later said of this decision, in *Poultney v. Tiffany,* 112 Md. 630, 635, 77 A. 117, 118, that "this result was reached because the court was of opinion that the testator had not clearly indicated his intention to postpone the vesting in interest to the latter of the two periods mentioned, and the case was thus brought within the general rule favoring early vesting." As showing no intention, in *Poultney v. Tiffany,* of qualifying the decision in *Cox v. Handy,* the opinion by Judge Pearce says: "Judge McSherry, who delivered the opinion in *Larmour v. Rich,* was the only judge who participated in both these decisions, and no one, remembering the care and caution with which he reached his conclusions as a judge, and the steadfastness with which he adhered to a conclusion once deliberately reached, can for a moment suppose that in uniting in the opinion in *Cox v. Handy,* he receded from or qualified his opinion in *Larmour v. Rich,* or regarded these cases as in any manner conflicting, one with the other." In *Roberts v. Roberts,* 102 Md. 131, 62 A. 161, the provision for the remainders was: "I devise and bequeath all my estate * * * remaining at the death of my said wife, to my children by my said wife, share and share alike, absolutely in fee simple; the child or children of a deceased child shall stand in its or their parent's place and stead, and receive and have the share and interest its and their parent would have been entitled to if living." It was there held that the remainders were vested and not contingent, and that the rule, followed in the cases of which *Larmour v. Rich,* 71 Md. 369, 18 A. 702, is typical, did not apply, "in which cases the period of survivorship is generally referred to the period of distribution, and not to the death of the testator. There is no reference to survivorship in this will," upon which the decisions in the cases relied on by the appellants turned.

It is our opinion that the only inference to be drawn from the will of David S. Wilson is that he intended the corpus of his daughter's trust estate to vest in his two sons, James and William, "equally and absolutely," with the possession only delayed until her death, and that there is nothing in the will showing an intention that the remainders should vest at any other time.

On motion for reargument in *Cox v. Handy*, it was said in the opinion overruling the motion that "a share of the property vested in each of the children who were living at the time of his (testator's) death, and, if any child died before the period of distribution, leaving children, they were substituted in his place. His share, however, was not divested if he left no children, but it went to his representatives," and that is our opinion in this case. The decree will therefore be affirmed.

> *Decree affirmed, costs to be paid out of the corpus.*