## COMMISSIONER OF INTERNAL REVENUE v. STEWART'S ESTATE.

### No. 8733.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 6, 1945.

Decided Jan. 9, 1946.

William B. Waldo, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Norman D. Keller, of Pittsburgh, Pa. (W. A. Seifert and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., on the brief), for respondent.

Before BIGGS, Circuit Judge, and FORMAN and LEAHY, District Judges.

BIGGS, Circuit Judge.

On the day of his death, December 11, 1937, William W. Stewart owned 61,676 shares of stock of Harbison-Walker Refractories Company and 113,200 shares of stock of the Long Island Lighting Company. These stocks were valued in Stewart's estate tax return, as of December 11, 1937, at $1,164,115.63 or at $18.875 per share for the Harbison-Walker stock and at $56,600 or at 50¢ a share for the Long Island stock. The Commissioner determined that these stocks had a value of $1,623,065.63, or $22.-875 per share for the Harbison-Walker stock and $1.875 per share for the Long Island stock. He assessed a deficiency. The trustees sought redetermination in the Tax Court.

The Treasury Department has attempted to isolate one question of law—What are the sound and applicable criteria of valuation under the circumstances of the instant case? To secure that end a stipulation was entered into by the parties. It includes statements that Stewart held the stocks for investment and that neither Stewart nor any of his beneficiaries sold or offered to sell any stock; that expert witnesses, if called, would testify that if the stocks had been offered for sale on December 11, 1937, by skilled brokers the amount realized for the Harbison-Walker shares would have been less than $20 per share and the amount received for the shares of Long Island would have been less than $1⅝₆ per share. Other data contained in the stipulation [1] was objected to by the respondent on the ground of lack of relevancy. We conclude as did the Tax Court that this data was relevant.

The Tax Court applied the provisions of Section 302(a) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Code § 811(a), of Section 506 of the Revenue Act of 1934, c. 277, 48 Stat. 680, amending Section 1108(a) of the Revenue Act of 1926,

26 U.S.C.A. Int.Rev.Code § 3791, and Article 10 of Regulations 80, as amended by T.D. 4902, 1939—1 Cum.Bull. 325 and stated, "In valuing shares of stock for estate tax purposes the aim is to determine the fair market value of all of the shares of stock owned by the decedent at the date of his death. The object is to find the fair market value between a willing buyer and a willing seller. This presupposes a knowledge of the essential facts. We think that upon a knowledge of essential facts purchasers for the large block of Harbison-Walker common stock and Long Island common stock could not have been found at prices in excess of $20 for the Harbison-Walker stock and $1⅝₆ for the Long Island stock." [2] The determination was made accordingly. The Commissioner has petitioned for review.

We conclude that the decision of the Tax Court is correct and that the contentions of the Commissioner cannot be sustained. The Commissioner sought to have the court below disregard the so-called "blockage" rule and asserts that immediate realization prices on large blocks of stock are improper criteria of value because they are forced sale prices. As a complement to this contention was an insistence that the Tax Court applied the criterion of "market prices which might obtain" if the stocks to be valued were to be added immediately to the supply in the market. Relying upon paragraph (c) of Article 10 of Regulations 80, the Commissioner asserts that the fair market values per share on the applicable valuation date were the prices on the stock exchanges as quoted in the stipulation and that no other indicia of fair market value should be considered. He thus sought to exclude from consideration by the Tax Court [3] all other elements which might affect or go to make up fair market value.

No useful purpose would be served in reviewing the leading "blockage" cases in this opinion. The principles inherent in fixing "fair market value" at a discount under market prices because of the size of blocks of stock is well illustrated by D. duPont v.

[1] The stipulation included the reports of Poore's Manuals of "Industrials" and "Utilities" for 1939, the earning and dividend records and balance sheets of the two companies, the Dow-Jones Industrial and Utilities Averages for the year 1937, the volume of the shares sold, the prices obtained therefor and other data.

[2] The opinion of the Tax Court is not reported.

[3] The Tax Court took into account not only the elements set forth in note 2 supra but considered as well the effect of the stipulation that expert witnesses would testify, if called, that the blocks of stock could not be disposed of at prices above those stipulated.

Commissioner, 2 T.C. 246; Avery v. Commissioner, 3 T.C. 963; Helvering v. Safe Deposit & Trust Co., 4 Cir., 95 F.2d 806; Helvering v. Maytag, 8 Cir., 125 F.2d 55, and Page v. Howell, 5 Cir., 116 F.2d 158. Decisions which look the other way include Roth v. Wardell, 9 Cir., 77 F.2d 124; Bull v. Smith, 2 Cir., 119 F.2d 490;[4] Gamble v. Commissioner, 6 Cir., 101 F.2d 565, and Phipps v. Commissioner, 10 Cir., 127 F.2d 214. Cf. Ray Consol. Copper Co. v. United States, 268 U.S. 373, 45 S.Ct. 526, 69 L.Ed. 1003, and Hazeltine Corp. v. Commissioner, 3 Cir., 89 F.2d 513, 519.

We entertain no doubt that the estate tax statute must be construed, as the Commissioner insists, in pari materia with the gift tax statute. Estate of Sanford v. Commissioner, 308 U.S. 39, 44, 60 S.Ct. 51, 84 L.Ed. 20. We agree also that Article 10 of Treasury Regulations 80 represents a valid exercise of the rule-making authority. The question presented seems to us to be one of the construction to be applied to the statute and to the regulations and therefore to be purely one of law.

The Commissioner was required to determine the fair market value of the stocks as of the time of Stewart's death; that is to say, as of December 11, 1937. While presuming that a willing buyer and a willing seller will arrive at fair market value, we think it must be assumed also that the buyer and seller possess knowledge of essential facts. An essential fact imputed to the buyer by the Tax Court was that substantial margins below market prices would have been required to secure a secondary distribution of the stocks. The Tax Court, finding such margins indispensable to a valuation of fair market price on the critical date, adhered to that part of subparagraph (c) of Article 10 of Regulations 80 which provides "In cases in which it is established that the value per * * * share * * * determined on the basis of selling or bid and asked prices * * * does not reflect the fair market value thereof, then some reasonable modification of such basis or other relevant facts and elements of value shall be considered in determining fair market value."

The untenable position of the Commissioner is further demonstrated by the fact that the sentence which followed the word "value", last occurrence in the above quotation, was dropped from the amended regulations. That sentence was: "The size of the holdings of any security to be included in the gross estate is not a relevant factor and will not be considered in such determination." As pertinent as the foregoing is the fact that subparagraph (a) of Article 10, prior to amendment, contained the clause "or by an estimate of what a whole block or aggregate would fetch if placed upon the market at one and the same time", now omitted. The clause quoted followed the sentence of the present regulation: "The fair market value of a particular kind of property includible in the gross estate is not to be determined by a forced sale price." The only reasonable explanation for the amendments lies in the recognition of the Treasury Department that large blocks of stock under certain circumstances require a margin for redistribution and that this fact may be deemed to affect the fair market value of stock.

In our opinion the Tax Court did not err when it found "fair market value" by weighing all relevant indicia of what the stocks would bring at market.

The decision of the Tax Court is affirmed.

[4] But compare the more recent decision of the Circuit Court of Appeals for the Second Circuit in Groff v. Munford, 150 F.2d 825.