ESTATE OF GEORGE M. MOFFETT, DECEASED, THE HANOVER BANK, EXECUTOR, AND JAMES A. MOFFETT 2D, EXECUTOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61764. Filed December 17, 1958.

*R. Palmer Baker, Jr., Esq.*, for the petitioners.
*Ellyne E. Strickland, Esq.*, for the respondent.

#### OPINION.

TRAIN, *Judge:* Respondent determined a deficiency in petitioners' estate tax in the amount of $436,044.99. The petitioners claim that an overpayment of tax has been made.

The issues for our decision are: (1) Whether the petitioners are entitled to a deduction under section 812 (d) of the Internal Revenue Code of 1939 with respect to the value of a remainder interest in the corpus of a testamentary trust established by decedent, said remainder

interest being for the benefit of a charitable corporation, and (2) if the answer to the first issue is in the affirmative, the value of that interest.

All of the facts have been stipulated and are hereby found as stipulated.

The decedent herein, George M. Moffett, died testate a resident of Queenstown, Queen Anne's County, Maryland, on December 22, 1951. The Hanover Bank and James A. Moffett 2d are the duly qualified and acting executors under the last will and testament of the decedent. The estate tax return was filed with the collector of internal revenue for the district of Maryland.

Deceased's last will and testament provides in part, as follows:

EIGHTH: In the event that my wife, Odette Fuller Feder Moffett, shall survive me, I give and bequeath to my Executors and Trustees, hereinafter named, the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00) either in cash, or, in the discretion of said Executors and Trustees, partly in cash and the balance in marketable securities owned by me at the time of my death to be taken at the values thereof as finally determined for Federal estate tax purposes, IN TRUST, NEVERTHELESS, to hold, manage, invest and reinvest the same and dispose thereof and the income therefrom for the following uses and purposes:

A. To pay to my wife, Odette Fuller Feder Moffett, entirely out of the capital or principal of said Trust Fund, the sum of Fifty Thousand Dollars ($50,000.00) per annum in approximately equal quarterly instalments until the entire capital or principal of such Trust Fund shall have been so utilized, or until her death in the event that she should die prior to the complete exhaustion of said capital or principal through such annual payments.

In the event of the death of my said wife prior to the complete exhaustion of the capital or principal of such Trust Fund, the entire balance of such capital or principal, then remaining in the hands of said Trustees shall be forthwith paid over to Whitehall Foundation, Inc., a corporation organized under the laws of the State of New Jersey, to be used and applied by such corporation, in, for and to its corporate purpose in such manner as may be determined by the Trustees of said corporation.

During the life of my wife, all net profits realized from the sale or other disposition of capital assets of said Trust Fund shall be retained by the Trustees as a reserve against depreciation in the value of capital assets or losses realized from the sales or other dispositions thereof.

B. To pay to Whitehall Foundation, Inc., a corporation organized under the laws of the State of New Jersey, annually, the entire net income of said Trust Fund, to be used and applied by such corporation in, for and to its corporate purposes in such manner as may be determined by the Trustees of said corporation.

C. The amounts payable to my wife under the provisions of this paragraph Eighth of my Will shall inure to her benefit from the date of my death and be payable to my Executors during the period of administration of my estate and any amounts so paid to my said wife during said period shall be charged against the principal of such Fund and be deductible therefrom at the time of the transfer of such Trust Fund by said Executors to themselves as Trustees.

NINTH: I give and bequeath to my Executors and Trustees, hereinafter named, the sum of Three Hundred Thousand Dollars ($300,000.00), either in

cash, or, at the discretion of said Executors and Trustees, partly in cash and the balance in marketable securities owned by me at the time of my death to be taken at the values thereof as finally determined for Federal estate tax purposes, IN TRUST, NEVERTHELESS, to hold, manage, invest and reinvest the same and dispose thereof and the income therefrom for the following uses and purposes:

A. To pay to my brother, JAMES A. MOFFETT, entirely out of the capital or principal of said Trust Fund, the sum of Ten Thousand Dollars ($10,000.00) per annum, in equal quarterly installments, until the entire capital or principal of such Trust Fund shall have been utilized, or until his death in the event that he shall die prior to the complete exhaustion of such capital or principal.

B. To pay to my sister, HELEN M. BARKER, entirely out of the capital or principal of said Trust Fund, the sum of Ten Thousand Dollars ($10,000.00) per annum, in equal quarterly instalments, until the entire capital or principal of such Trust Fund shall have been utilized, or until her death in the event that she should die prior to the complete exhaustion of said capital or principal.

In the event of the death of both my said brother and my said sister prior to the complete exhaustion of the capital or principal of such Trust Fund, the entire balance of such capital or principal, then remaining in the hands of said Trustees, shall be forthwith paid over to Whitehall Foundation, Inc., a corporation organized under the laws of the State of New Jersey, to be used and applied by such corporation in, for and to its corporate purposes in such manner as may be determined by the Trustees of said corporation.

During the lives of my said brother and sister and the survivor of them, all net profits realized from the sale or other disposition of capital assets of said Trust Fund shall be retained by the Trustees as a reserve against depreciation in the value of capital assets or losses realized from the sales or other dispositions thereof.

C. To pay to Whitehall Foundation, Inc., a corporation organized under the laws of the State of New Jersey, annually, the entire net income of said Trust Fund, to be used and applied by such corporation in, for and to its corporate purposes in such manner as may be determined by the Trustees of said corporation.

Said Trustees may in their discretion, in lieu of holding the Trust Fund provided in this Ninth paragraph of my Will, use all or such part of the principal as they may deem advisable to purchase annuities from one or more insurance companies in good standing, for the benefit of the persons entitled to such annuity payments, and in case such annuities are purchased covering the entire amounts of the annuity payments, any balance of the Trust Fund over the cost of such annuities, shall be paid to Whitehall Foundation, Inc. and the Trust shall thereupon terminate. Otherwise the provisions hereof applicable to the Trust shall apply to such balance of the Trust Fund and the balances of the annuity payments not provided for by the annuities purchased. In case the annuities purchased are such as provide for any repayments by the insurance company or companies upon the death of the respective annuitants, such repayments shall be made payable to said Whitehall Foundation, Inc.

In the event that either my said brother or my said sister shall die between the dates on which quarterly instalments are customarily paid by said Trustees, the quarterly payment which would be due on the next quarterly payment date shall not be payable to his or her administrators, executors, heirs or legatees, but shall be added to the principal of the Trust Fund.

The interest of the beneficiaries under the Trust Fund provided under this Ninth paragraph of my Will shall not be anticipated, alienated or in any other manner assigned by either of such beneficiaries, and shall not be subject to any legal process, bankruptcy proceedings, or the interference or control of creditors or others.

The amounts payable to my brother and sister under the provisions of this paragraph Ninth of my Will shall inure to their respective individual benefit from the date of my death and be payable by my Executors during the period of administration of my estate and any amounts paid to said beneficiaries during such period shall be charged against the principal of the Trust Fund and deducted therefrom at the time of the transfer of such Trust Fund by such Executors to themselves as Trustees.

TENTH: In the event that my net estate, after deducting therefrom the value of the properties disposed of under the provisions of the Second, Third and Fourth paragraphs of this Will and all taxes and administration charges and expenses, shall not be sufficient to pay in full all of the specific legacies provided under the Fifth and Seventh paragraphs hereof, and the capital of the Trust Funds established under the Eighth and Ninth paragraphs above, I order and direct that all of such specific legacies and the capital of such Trust Funds shall be reduced proportionately so that each beneficiary, including the Trustees of said Trust Funds, shall receive a ratable share, and no part of the deficiency shall be charged against or realized from the properties devised or bequeathed under the provisions of the Second, Third and Fourth paragraphs of this Will.

ELEVENTH: In the event that, after deducting the value of the properties disposed of under the provisions of the Second, Third and Fourth paragraphs of this Will, the full amount of all specific legacies as provided under the Fifth and Seventh paragraphs hereof, the full amount of the capital of the Trust Funds established under the provisions of the Eighth and Ninth paragraphs hereof and all taxes and administration charges and expenses from my net estate, there still remains a balance of assets in the hands of my Executors available for distribution, I give and bequeath to "The Trustees of Princeton University", a corporation existing under the laws of the State of New Jersey, and located in the Borough of Princeton, County of Mercer, in said State, such part of such balance as shall not exceed the sum of Three Hundred Thousand Dollars ($300,000.), to be held in trust for the establishment of a Professorship in the Biological Sciences to be known and designated as "The George M. Moffett Professorship" and the net income only to be used for the payment of such salary of the incumbent as shall be approved by the President of the University and any balance of income to be applied to the payment of the stipends paid to research assistants, the purchase of supplies, equipment, and other items which may be deemed to be advisable in the Department of Biological Science, maintained by said University.

TWELFTH: I give, devise and bequeath all the rest, residue and remainder of the property, real, personal or mixed, which I may own, or to which I may be entitled at the time of my decease, to Whitehall Foundation, Inc., a corporation organized under the laws of the State of New Jersey, to be used and applied by such corporation in, for and to its corporate purposes, in such manner as may be determined by the Trustees of said corporation.

THIRTEENTH: I authorize and direct my Executors to pay from my estate all inheritance taxes, legacy and succession, estate and other taxes in the nature of inheritance taxes, payable on all interests passing under this Will with power to make such agreements and compromises in connection therewith as they may deem best.

FOURTEENTH: I appoint The Hanover Bank of New York City and my son, James A. Moffett, II, and the survivor of them, as Executors and Trustees of this Will, and request that they be exempt from giving any bonds or other sureties in such capacities.

Petitioners computed the amount of $878,155.12 as the value of the charitable bequest under article Eighth of decedent's last will and testament, the amount of $148,445.95 as the value of the charitable bequest under article Ninth of the last will and testament, the amount of $4,141.67 as the value of the charitable interest in certain insurance policies includible in the gross estate, and the amount of $4,646,978.20 as the value of the charitable bequest out of the residuary estate. Respondent determined the present value of these bequests to be $622,536, $25,660, zero, and $4,298,844.27, respectively, on December 22, 1951, the date of decedent's death.

On April 12, 1956, which was after the mailing of the notice of deficiency herein, the petitioners paid to the district director of internal revenue at Baltimore, Maryland, the sum of $292,800 on account of the deficiency in the estate tax determined by the respondent herein. The petitioners claim an overpayment of tax with respect to such sum in an amount to be determined under Rule 50.

Under article Eighth of decedent's last will and testament, Odette Fuller Feder Moffett, hereafter referred to as Odette, decedent's widow, was given $50,000 yearly from the principal of the $1,500,000 trust fund established under that article, until the corpus of the trust was consumed, or until her death. She was born on August 5, 1901, and was 50 years of age when decedent died on December 22, 1951. She would have to live at least 30 years after decedent's death to consume the corpus of the trust.

Under article Eighth, the entire net income of the trust, during the life of Odette, was made payable annually to the Whitehall Foundation, Inc., hereafter referred to as the Foundation, a charitable corporation within the purview of section 812 (d) of the Internal Revenue Code of 1939. Likewise, under the same article, the Foundation was to receive the remaining trust corpus if Odette should die without consuming the entire principal. The present worth of the income interest of the Foundation in the $1,500,000 trust was $622,536 as of December 22, 1951.

The Foundation was vested with a beneficial interest in the trust fund of $300,000 established under the article Ninth of the above will, the present value of which was $128,528 as of the date of decedent's death. Under article Twelfth of the will the decedent's entire residuary estate was vested in the Foundation. Under articles Tenth, Eleventh, and Thirteenth, all inheritance taxes, legacies and successions, estate and other taxes in the nature of inheritance taxes were payable out of the residuary estate.

The remainder interest of the Foundation in the $1,500,000 trust fund will not vest until or upon the happening of the contingency, namely, the death of Odette prior to consuming the entire principal, and therefore, is a contingent remainder. See *Wilson* v. *Pichon*, 162 Md. 199, 159 Atl. 766 (1932) ; and 1 American Law of Property sec. 4.36 (1952). In *Humes* v. *United States*, 276 U. S. 487 (1928), the Court dealt with a charitable remainder, contingent upon the death of a girl, then 15 years of age, before reaching the ages of 30, 35, and 40 without issue. If she did die with issue, then the charity would not take. The Court stated (276 U. S. 487, at 494) :

One may guess, or gamble on, or even insure against, any future event. The Solicitor General tells us that Lloyds of London will insure against having twins. But the fundamental question in the case at bar, is not whether this contingent interest can be insured against or its value guessed at, but what construction shall be given to a statute. Did Congress in providing for the determination of the net estate taxable, intend that a deduction should be made for a contingency, the actual value of which cannot be determined from any known data? Neither taxpayer, nor revenue officer—even if equipped with all the aid which the actuarial art can supply—could do more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character. Compare *Edwards* v. *Slocum*, 264 U. S. 61, 63.

If a trust remainder is left to charity, subject to an income interest of an intervening life estate, and subject to invasion, then no deduction is granted unless the right of invasion is subject to a fixed and definite standard so as to permit an accurate measurement of the value of the remainder. *Robinette* v. *Helvering*, 318 U. S. 184 (1943) ; and *Ithaca Trust Co.* v. *United States*, 279 U. S. 151 (1929). Or if the accurate measurement of the remainder is rendered impossible because of some contingency which cannot be valued, the deduction is not allowed. *Commissioner* v. *Sternberger's Estate*, 384 U. S. 187 (1955). In *Sternberger's Estate*, *supra*, the use of actuarial tables made it possible to place some value on the remainder interest. However, the Court noted that the contingency was in the nature of an incentive to the deceased's daughter to remarry, have children, and thereby defeat the charitable remainder. It was this contingency, voluntary in nature, which led the Court to refuse the actuaries' valuation of the charitable remainder. A similar voluntary contingency was present in *Humes* v. *United States*, *supra*. Here, the vesting of the Foundation's interest does not depend on a voluntary act of Odette, and, thus, the contingency is not entirely similar to those present in either *Humes*, *supra*, or *Sternberger's Estate*, *supra*.

The extent to which the corpus of the trust is to be invaded in this case for the benefit of the private individual is accurately measured. It extends to $50,000 yearly, for the life of Odette. The life expectancy of Odette at decedent's death, based on the applicable mortality

assumption specified in the Actuaries' or Combined Experience Tables of Mortality, for a white female, 50 years of age, was 20.18 years. The right of invasion is valued as $630,372, as of the date of decedent's death, or, in other words, it would take $630,372 to purchase an annuity which would pay Odette $50,000 yearly for her life. The right of Odette to invade the trust principal has not rendered the charitable remainder so uncertain as to be impossible of valuation. *Ithaca Trust Co.* v. *United States, supra.* The question, however, is whether any deduction can be allowed for the value of the remainder interest of the Foundation under section 812 (d) of the Internal Revenue Code of 1939. The answer to this question depends on whether the possibility that the Foundation will not take is so remote as to be negligible. *Commissioner* v. *Sternberger's Estate, supra;* Regs. 105, sec. 81.46.

The chances of Odette's living at least the full 30 years, the minimum number of years required to consume the trust corpus, based on the Actuaries' or Combined Experience Tables of Mortality, were 191 in 1,000 as of the date of decedent's death. Table 6 of United States Life Tables and Actuarial Tables (1939–1941), states the life expectancy of a 50-year-old female, white, to have been 24.72 years as of the date of decedent's death, and the chances that she might live at least the full 30-year period to have been 291 in 1,000. The respondent maintains that the latter is the applicable table while the petitioners assert that the former is applicable.

In *United States* v. *Dean*, 224 F. 2d 26 (C. A. 1, 1955), the court was presented with the problem of valuing a charitable remainder for the purpose of determining whether a charitable deduction should be allowed. The charitable remainder was to take effect in the event the testatrix's sister, age 82, predeceased both the daughter and daughter-in-law, ages 67 and 68, respectively. The chances that the charity, in that case, would not take were 1 in 11. The court concluded that the chance of the charity's not taking was not so remote as to be negligible, and disallowed the deduction. This Court in *Estate of Nathan P. Cutler, Jr.*, 5 T. C. 1304 (1945), affirmed sub nom. *Newton Trust Co.* v. *Commissioner*, 160 F. 2d 175 (C. A. 1, 1947), held a 50–50 chance that the charity would not take was not so remote as to be negligible. In *Estate of Helen Stow Duker*, 18 T. C. 887 (1952), the residue of the decedent's estate was left in trust to pay the income to a private beneficiary, but not less than $10,000 yearly. The individual was 71 years old at the time, and the chances that he would live long enough to consume the entire corpus were greater than 1–10. Nevertheless, the charitable remainder was valued and allowed as a deduction. We have held an 8.6 per cent chance of the contingency's happening which would reduce the value of the charitable remainder not to be so remote as to be negligible in *Estate of*

*Jean S. Alexander*, 25 T. C. 600 (1955). In that case the private beneficiary, aged 50, was to receive $25,000 on remarrying, and, thus, the contingency was subject to the same type of voluntary act present in *Sternberger's Estate, supra.*

The Supreme Court recognized in *Commissioner* v. *Sternberger's Estate, supra,* that Regulations 105, section 81.46, are an effective implementation of the statutory provisions. However, there appears to be no clear rule by which we could state that one ratio presents a remote possibility, while another presents a not-so-remote possibility. The regulations give us no more aid than simply to provide the rule that the possibility that the charity will not take must be so remote as to be negligible. The petitioners argue that the instant case differs substantially from the cases referred to above because here the charity's interest in the trust cannot be entirely defeated by the happening of the contingency. They point out that the Foundation had a present interest in the trust income from the inception of the trust. However, the respondent has allowed a deduction for the value of the Foundation's income interest. The only issue is whether the petitioners are also entitled to a deduction for the value of the remainder interest. As we have found, the latter interest is contingent in nature, and we do not accept the suggestion that it somehow loses that character by merger with the present interest. Being a contingent remainder, its deductibility is governed by section 812 (d) as implemented by section 81.46 of Regulations 105, and the value of the remainder is deductible only if the possibility of the charity's not taking the remainder itself is so remote as to be negligible.

In the instant case, having given careful consideration to all the factors here present, including the age of the widow, her right of invasion, her life expectation, the valuation of her life interest, the size of the trust fund, the income interest of the charity, the nature of the contingency, and the actuarial probabilities of the occurrence of that contingency, and having assigned to each of the relevant factors such weight as we consider appropriate under the circumstances, we decide that the possibility that the charity will not take is not so remote as to be negligible. Thus, the petitioners are not entitled to a deduction for the value of the remainder interest to charity.

In so deciding, we need not decide which mortality table is applicable in this case because under either table the possibility of the charity's not taking is not so remote as to be negligible. Under the table urged upon us by the petitioners, that possibility is computed to be 191 chances in 1,000, or almost 20 per cent. Such a possibility is not negligible.

Having so decided, we need not determine what value is to be allowed for the charitable interest in the trust fund.

*Decision will be entered under Rule 50.*