ESTATE of George M. MOFFETT, Deceased, The Hanover Bank, Executor, and James A. Moffett, 2nd, Executor, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 7879.

United States Court of Appeals Fourth Circuit.

Argued June 23, 1959.

Decided Aug. 3, 1959.

R. Palmer Baker, Jr., New York City (Harry J. Rudick, Mason G. Kassel, New York City, and David R. Frazer, Washington, D. C., on the brief), for petitioners.

Ralph S. Spritzer, Asst. to Sol. Gen., Washington, D. C. (Howard A. Heffron, Acting Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, and L. W. Post, Attys. Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and THOMSEN, District Judge.

THOMSEN, District Judge.

This is a petition for review of a decision of the Tax Court, 31 T.C. 541, involving estate taxes, specifically a charitable deduction asserted by the executors under sec. 812(d) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812(d), with respect to a trust created by the will of their decedent, George M. Moffett, who died in December 1951. The question presented is whether the deduction should be restricted to the value of the charitable corporation's right to receive the trust income during the life of decedent's widow, as the Commissioner and the Tax Court held, or whether the deduction should also include the value of the charity's contingent interest in the corpus.

Under the eighth paragraph of his will [1] decedent gave $1,500,000 to his executors and trustees, in trust to pay to his widow $50,000 per annum out of the principal of the trust until the entire principal is consumed or until her death prior thereto. The net income of the trust, during her life, is payable to Whitehall Foundation, Inc., a charitable corporation, to be used by its trustees for its corporate purposes. If the widow dies before the complete exhaustion of the principal of the trust fund, the remaining principal is to be paid to the Foundation.

Decedent's wife was living and was fifty years of age on the date of his death. Based on Table 6 of the United States Life Tables and Actuarial Tables (1939–1941), her life expectancy on that date was 24.72 years; the chances of her living the full thirty year period, which would have to expire before the trust fund would be completely exhausted, were 290 in 1,000. Based on the Actuaries' or Combined Experience Table of Mortality, she had a life expectancy of 20.18 years, and the chances of her living thirty years were 191 in 1,000.

The Commissioner determined that the present value of the Foundation's inter-

---

[1] "Eighth: In the event that my wife, Odette Fuller Feder Moffett, shall survive me, I give and bequeath to my Executors and Trustees * * * $1,500,-000 * * * In Trust, Nevertheless, to hold, manage, invest and reinvest the same and dispose thereof and the income therefrom for the following uses and purposes:

"A. To pay to my wife, Odette Fuller Feder Moffett, entirely out of the capital or principal of said Trust Fund, the sum of Fifty Thousand Dollars ($50,000.00) per annum in approximately equal quarterly instalments until the entire capital or principal of such Trust Fund shall have been so utilized, or until her death in the event that she should die prior to the complete exhaustion of said capital or principal through such annual payments.

"In the event of the death of my said wife prior to the complete exhaustion of the capital or principal of such Trust Fund, the entire balance of such capital or principal, then remaining in the hands of said Trustees shall be forthwith paid over to Whitehall Foundation, Inc., a corporation organized under the laws of the State of New Jersey, to be used and applied by such corporation, in, for and to its corporate purpose in such manner as may be determined by the Trustees of said corporation.

"During the life of my wife, all net profits realized from the sale or other disposition of capital assets of said Trust Fund shall be retained by the Trustees as a reserve against depreciation in the value of capital assets or losses realized from the sales or other dispositions thereof.

"B. To pay to Whitehall Foundation, Inc., a corporation organized under the laws of the State of New Jersey, annually, the entire net income of said Trust Fund, to be used and applied by such corporation in, for and to its corporate purposes in such manner as may be determined by the trustees of said corporation.

"C. The amounts payable to my wife under the provisions of this paragraph Eighth of my Will shall inure to her benefit from the date of my death and be payable to my Executors during the period of administration of my estate and any amounts so paid to my said wife during said period shall be charged against the principal of such Fund and be deductible therefrom at the time of the transfer of such Trust Fund by said Executors to themselves as Trustees."

est in the trust as of the date of decedent's death was $622,536, which is the present worth of the right to receive the income from the diminishing fund for a period of thirty years. The Commissioner allowed that amount as a charitable deduction, but he refused to allow any deduction for the Foundation's conditional interest in the corpus of the trust. The executors contend that the charitable deduction should be valued by subtracting the actuarial value of the widow's annuity from the total value of the trust property.

Sec. 812(d) of the Internal Revenue Code of 1939 was implemented by Treasury Regulations 105, secs. 81.44 and 81.46. Sec. 81.46, which applies in this case, was approved in Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246, in Bowers v. South Carolina National Bank of Greenville, 4 Cir., 228 F.2d 4, and in United States v. Dean, 1 Cir., 224 F.2d 26. It provides in material part:

"Sec. 81.46. *Conditional bequests.* (a) If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some act or the happening of some event which appeared to have been highly improbable at the time of decedent's death, the deduction is allowable."

In the instant case the Tax Court, after considering all relevant factors, decided that the possibility that charity will not take the remainder interest is not so remote as to be negligible, and, therefore, that the estate is not entitled to a deduction for the value of that interest. We agree with that conclusion.

The instant case is quite similar to United States v. Dean. There, as here, the vesting of the charity's remainder interest in the corpus did not depend upon the voluntary act of an individual, cf. Commissioner of Internal Revenue v. Sternberger's Estate; the probabilities were capable of actuarial calculation. In Dean the chance that the charity would not take was 1 in 11, about 9%. In the instant case, the chance that the charity will receive no part of the corpus is 19% or 29%, depending upon which table is used. Moreover, the amount which the charity may ultimately receive is uncertain. In Dean the First Circuit said:

"Off hand it would seem eminently fair and administratively simple to allow such a deduction in cases such as this where the chance that charity will take can be accurately computed actuarially. But the Supreme Court in the Sternberger case rejected the argument that the applicable regulations permit proportional deductions. The Court construed § 81.46 * * * as taking not a proportional but an all or nothing approach to the problem of deductions on account of contingent bequests to charity. Thus the section either denies any deduction at all for a contingent bequest to charity, or else it permits the deduction of the present value of the entire contingent bequest, allowing the latter whenever 'the possibility that charity will not take is so remote as to be negligible.'

\* \* \* \* \* \*

"The line between those chances which are so remote as to be negligible and those which are not lies somewhere between these extremes. We cannot say exactly where. We can only decide specific cases as they arise using the best judgment we have in placing them on one side or the other of the line. And there is no standard to guide us except our estimate of the extent of the encouragement tax-wise which Congress wished to give testators to make

gifts to charity. Our judgment being largely subjective, about all we can say is that we do not think that one chance in eleven can be considered so remote a chance as to be negligible, that is, a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction." 224 F.2d at pages 28, 29.

The executors contend that the entire beneficial and economic interest in the trust fund of $1,500,000 was vested in the Foundation upon decedent's death subject only to the fixed annuity payable to his widow, and that the interest of the Foundation in the income and its contingent interest in the corpus should be considered as having been merged. The executors contend that the allowance should have been $869,628, a figure reached by subtracting from $1,500,000 (the entire amount of the trust fund) the sum of $630,372 (the actuarially computed value [2] of an annuity of $50,000 payable quarterly to a person aged 50 for a period of 30 years or until prior death). They say in their brief: "If the decedent had specifically provided in his will that $1,500,000 would go to Whitehall Foundation in trust, subject to the payment of $50,000 per year to Mrs. Moffett for the balance of her life, it is clear that the interest passing to the Foundation for charitable deduction purposes would be calculated by subtracting the actuarial value of Mrs. Moffett's life estate from the value of the trust corpus. This in substance is what the decedent did. In form, however, he bequeathed to his wife $50,000 per year out of the trust fund and then labeled the bequest to the Foundation in terms of two interests: a present interest in the income and a remainder interest in the corpus of the fund."

While it is true that substance is to be regarded rather than form, the difference between the actual will and the provision imagined by the executors in their brief is more than a mere matter of form. In the imagined provision the $50,000 a year would be taxable income to the widow; but the actual will was carefully drawn in an effort to prevent the $50,000 a year from being so taxable.[3] The imagined provision would permit the larger deduction for estate tax purposes for which the executors contend. Reg. 105, sec. 81.44. The testator, however, gave up the larger estate tax deduction in exchange for a better chance for an income tax deduction.

Neither the executors-trustees nor the Foundation could purchase an annuity of $50,000 a year and require the widow to accept it in place of her rights under the will, because the income she would have received from such an annuity would be taxable to her. An annuity of $50,000 per year free of income taxes is worth much more than an annuity of like amount subject to income taxes, and could not be bought for $630,372.

The cases relied on by the executors [4] are distinguishable, because none of them involved either a contingent interest such as we have in this case or an effort to secure tax free income for a beneficiary.

The decision of the Tax Court is

Affirmed.

---

2. Assuming an interest rate of 4%. See Regs. 105, sec. 81.10(j).

3. Although it may be debatable whether or not it was taxable income to the widow under the 1939 Code, it is certainly not taxable income under the 1954 Code.

4. Estate of Nicholas Murray Butler, 18 T.C. 914; In re Estate of Bartlett (Brown v. Smith), D.C.E.D.Pa., 153 F. Supp. 674; Estate of Philip A. Reichers, T.C.Memo.Op. (May 19, 1950); Estelle May Affelder, 7 T.C. 1190.