ESTATE OF MARCELLUS L. JOSLYN, ROBERT D. MacDONALD, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5591–67. Filed March 9, 1972.

---

*Malcolm George Smith*, for the petitioner.
*Allan D. Teplinsky* and *Norman H. McNeil*, for the respondent.

SIMPSON, *Judge:* The respondent determined a deficiency in the Federal estate tax of the Estate of Marcellus L. Joslyn in the amount of $150,710.74. A number of issues have been settled; the issue remaining for decision is whether certain expenses incurred in connection with the sale of stock, having been allowed as a reduction in the value of the stock to be included in the gross estate, are also deductible as expenses of administration under section 2053 of the Internal Revenue Code of 1954.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

Marcellus L. Joslyn (the decedent), a widower, died testate a resident of California on June 30, 1963. The petitioner, the Estate of Marcellus L. Joslyn, Robert D. MacDonald, executor, maintained its office in Santa Monica, Calif., at the time of filing its petition in this case. A Federal estate tax return for Marcellus L. Joslyn's estate was filed with the district director of internal revenue, Los Angeles, Calif.

On the date of his death, the decedent owned 66,099 shares of the common stock of Joslyn Mfg. & Supply Co. (the Joslyn stock). During the course of its administration, the estate was involved in certain costly litigation concerning the admissibility to probate and the validity of the decedent's will. As a result thereof, the estate incurred substantial extraordinary executor's and attorney's fees. In order to pay such fees and the balance of Federal and State taxes, it was necessary to sell assets of the estate, and a portion of the Joslyn stock held by the petitioner was selected as an asset to be sold for such purposes. It was agreed that such stock would be sold through an underwriting group in a "secondary offering" to the public, and the sale of the stock was completed on April 6, 1965.

The 66,099 shares of Joslyn stock were reported on the Federal estate tax return as having a value of $3,040,544 at the date of the decedent's death. An audit of the return was completed by the respondent after the sale of the stock, and upon its completion, the respondent's agent proposed an increase in the date-of-death value of the stock to $3,103,697.43. In his report, the agent computed the value of the stock as follows:

---

[1] All statutory references are to the Internal Revenue Code of 1954.

Item 32, Joslyn Mfg. Co. Discount was allowed up to the distribution expenses incurred as follows:

| | | |
|---|---:|---:|
| Fair market value at date of death determined by taking the mean between the high and low | | $3, 470, 197. 50 |
| Less: Travel expense | $489. 52 | |
| Bond premium for underwriter | 13, 679. 09 | |
| Attorneys for underwriter | 6, 860. 35 | |
| Reimbursement to Joslyn Mfg | 46, 366. 66 | |
| Additional cost for Joslyn Mfg | 1, 081. 30 | |
| Costs of Kindel & Anderson | 1, 327. 70 | |
| Additional costs Kindel & Anderson | 399. 07 | |
| Fees for registration | 7, 546. 38 | |
| Underwriters fees | 288, 750. 00 | 366, 500. 07 |
| | | 3, 103, 697. 43 |

Such valuation was reflected in the statutory notice of deficiency as having been determined in accordance with section 20.2031–2 of the Estate Tax Regulations on the basis of stock exchange quotations at the date of death with an allowance for blockage elements. The respondent's proposed adjustment as to the value of the Joslyn stock was accepted by the petitioner.

In this proceeding, the petitioner also claimed as administrative expenses a deduction for $366,500.07 relating to the secondary offering of the Joslyn stock. The respondent has denied a deduction for $359,194.71 of such expenses.

OPINION

The petitioner does not argue that the expenses of the secondary offering should be deductible instead of being taken into consideration in determining the value of the Joslyn stock; it argues that, and we must decide whether, it is entitled to deduct such expenses even though they resulted in a reduction in the value of the stock.

The Federal estate tax is imposed upon the net value of a decedent's estate. Secs. 2001, 2051; sec. 20.0–2, Estate Tax Regs.; *Estate of Henry E. Huntington*, 36 B.T.A. 698 (1937). Section 2031 and the regulations thereunder generally provide that property includable in the gross estate is to be valued at its retail or replacement cost value. Sec. 20.2031–1(b), Estate Tax Regs.; *Estate of Frances Foster Wells*, 50 T.C. 871 (1968), affd. 418 F. 2d 1302 (C.A. 6, 1969). However, when a large block of stock is to be valued, it may be valued by reference to the amount for which it could be sold to an underwriter. Sec. 20.2031–2(e), Estate Tax Regs.; *Commissioner* v. *Stewart's Estate*, 153 F. 2d 17 (C.A. 3, 1946), affirming a Memorandum Opinion of this Court; *Thomas A. Standish*, 8 T.C. 1204 (1947); *Sewell L. Avery*, 3 T.C. 963 (1944). To compute the amount of the taxable estate, the value of the

gross estate is reduced by certain deductions. Section 2053(a) allows a deduction for the expenses of administration, and section 20.2053–3 (d) (2), Estate Tax Regs., provides that deductible administration expenses include the expenses of selling property of the estate when such sales are necessary to pay the expenses of the administration of the estate. *Estate of Henry E. Huntington, supra.*

In *Estate of Elizabeth W. Haggart*, 13 T.C. 14 (1949), the value of a revocable trust was includable in the decedent's estate. Certain attorney fees and other expenses were incurred as a result of the inclusion of the property of the trust in the gross estate. We held that such expenses could not be used to reduce the value of the trust property in computing the value of the gross estate; nor were they deductible as expenses of administration of the estate. We were reversed by the Third Circuit on the premise that it was incongruous for the corpus of the trust to be included in the gross estate without taking into account expenses chargeable thereto in determining the net estate subject to tax. *Haggart's Estate v. Commissioner*, 182 F. 2d 514 (C.A. 3, 1950). The court said at page 516:

> Whether * * * [the expenses] are to be allowed as expenses of administration [2] or whether they are to be allowed in diminution of the gross estate [3] does not matter in this case. It comes out the same either way and, therefore, we refrain from committing ourselves to a choice. [Footnotes omitted.]

In *Emma Peabody Abbett*, 17 T.C. 1293 (1952), we followed the view of the Third Circuit in *Haggart;* in *Abbett*, we allowed the expenses there in issue as a deduction from the gross estate. In Rev. Rul. 293, 1953–2 C.B. 257, the respondent agreed that such trust expenses were allowable in computing the value of the trust property to be included in the estate.

The issue in this case is similar to that involved in *Haggart's Estate v. Commissioner, supra,* and *Emma Peabody Abbett, supra.* In those cases, it was held that the trust expenses should be taken into consideration in determining the amount of property subject to the estate tax, either by reducing the value of the property included in the estate or by allowing them as deductions. However, the courts clearly had in mind that a choice would have to be made—they could not be both charged against the value of the property and deducted. If the expenses of the secondary offering of the Joslyn stock are allowed in computing the value of such stock to be included in the estate, and if the same expenses are also held to be deductible under section 2053(a), such expenses would be allowed twice in computing the amount of the estate ultimately subjected to taxation. Such a result was clearly not contemplated in *Haggart's Estate v. Commissioner* or in *Emma Peabody Abbett*, and it surely was not contemplated under section 2053(a). Compare sec. 2053(a)(4).

In maintaining that it is entitled to deduct the selling expenses notwithstanding that they were offset against the value of the stock, the petitioner relies upon *Estate of Viola E. Bray*, 46 T.C. 577 (1966), affirmed per curiam 396 F. 2d 452 (C.A. 6, 1968), and other cases which followed our holding therein. However, *Bray* and the other cases which rely on it are distinguishable from the present case. In *Bray*, the question was whether the expenses of selling securities by an estate to secure funds for administration purposes could be deducted from the gross estate under section 2053 and offset against the sales price for income tax purposes. We held that section 642(g), which prohibits deducting the same item for both income and estate tax purposes, did not apply to an item which had been offset against the sales proceeds for income tax purposes. We said at page 582:

When selling expenses are offset against selling price the seller is being taxed on the gain he actually receives. When securities are valued as of the date of death, no account is taken of the fact that the fiduciary might have to sell them. * * *

We also pointed out that if the selling expenses were not offset against the proceeds, the income tax would be imposed upon the gross receipts, not the gain, a result completely contrary to congressional intent and the statutory scheme of our income tax laws. *Estate of Viola E. Bray, supra* at 582; see also *Estate of Walter E. Dorn*, 54 T.C. 1651 (1970). Thus, our decision in *Bray* was based on the premises (1) that an offset is not a true statutory deduction, and section 642(g) was applicable only in the case of true statutory deductions; (2) that the taxes on income and on the estate are computed separately; and (3) that it is proper for the selling expenses to be offset against the proceeds in computing the tax on income and also proper to allow the same expenses to be deducted in computing the net estate subject to taxation. *Estate of Viola E. Bray, supra* at 580–582.

In the present case, we are not concerned with two separate and distinct statutory schemes of taxation. The petitioner seeks to reduce the net estate subject to taxation twice by reason of the same selling expenses, once under section 2031 and then again under section 2053. We perceive no rational basis for allowing both the reduction in value and the deduction for the same expenses. There is no judicial authority supporting the allowance of both tax benefits, nor is there any indication that Congress intended to allow both tax benefits. On the contrary, attempts to reduce taxation by using the same item more than once have not been approved. *Ilfield Co.* v. *Hernandez*, 292 U.S. 62 (1934); *Marwais Steel Co.* v. *Commissioner*, 354 F. 2d 997 (C.A. 9, 1965), affirming 38 T.C. 633 (1962).

In conclusion, we hold that since the expenses of the secondary offering were clearly allowed in determining the value of the Joslyn stock to be included in the estate, the same expenses are not also deductible under section 2053 (a). However, we express no opinion as to whether such expenses should be offset against the value of the property includable in the estate or allowed as a deduction under section 2053, if the petitioner had not sought to do both.

Because of the settlement of other issues,

*Decision will be entered under Rule 50.*

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.