ESTATE OF MARIE A. DE FOUCAUCOURT, DECEASED, LLOYD V. ALMIRALL AND MANUFACTURERS HANOVER TRUST COMPANY, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7932–71, 7933–71. Filed July 8, 1974.

*Edward H. Hein* and *Charles M. Mitchell,* for the petitioner.
*Marion L. Weston,* for the respondent.

WILES, *Judge:* Respondent determined deficiencies in the Federal gift and estate taxes of petitioner as follows:

|  | Deficiency |
|---|---|
| Gift tax (1963) | $2, 164. 57 |
| Estate tax | 63, 579. 33 |

Several issues have been settled by the parties. The issues remaining for decision are:

(1) Whether principal commissions payable to trustees of an inter vivos trust established by decedent, the bulk of the trust assets being payable to decedent's estate, are excludable (or deductible) from decedent's gross estate;

(2) Whether the sale of an undivided one-half interest in real property by decedent was partially a gift;

(3) Whether the decedent, by retaining a life interest in property in which she owned an undivided one-half interest, is required to include one-half the value of the property in her gross estate or a lesser amount;

(4) Whether decedent's estate is entitled to a deduction for the value of a contingent charitable remainder interest.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Marie A. De Foucaucourt (hereinafter referred to as decedent), a United States citizen, died testate on June 27, 1967, in Paris, France. Lloyd V. Almirall and Manufacturers Hanover Trust Co. (hereinafter referred to as petitioners) were appointed executors of her estate on January 2, 1968, and duly qualified as such within the time and manner prescribed by law. Lloyd V. Almirall resided in South Salem, N.Y., and Manufacturers Hanover Trust Co. was located in New York, N.Y., at the time the petition was filed. Petitioners filed a Federal estate tax return with the district director of internal revenue in New York, N.Y.

On May 27, 1946, decedent established an inter vivos trust the provisions of which were amended on December 30, 1947. For purposes of this proceeding, the essential provisions of the trust, as amended, provided that trust income was payable quarterly to decedent during her lifetime. The trust also provided that upon decedent's death at least 99 percent of the trust assets "shall be transferred and paid over to the executors of the will of the Grantor." [1] The balance of the trust assets were to be paid over to decedent's nephews. As of decedent's death, the petitioners were the trustees of the trust. Petitioners reduced the amount which they included in decedent's gross estate by the amount of principal commissions due the trustees.[2] The trust instrument was to be construed and regulated pursuant to the laws of the State of New York.

Prior to February 12, 1963, decedent owned an undivided one-half interest in real property located at 270–272 Boulevard Saint Germain, Paris, France (hereinafter referred to as the Paris property). On February 12, 1963, decedent entered into an agreement with Guy A. Morel and Henri R. Morel, two of decedent's nephews, to sell the Paris

---

[1] The terms of the trust provided that income of the trust was to be paid to decedent's husband if he survived her, with payment of the remainder over to decedent's estate upon his death. Decedent's husband apparently predeceased decedent, as the trust assets were paid over to her estate upon her death.

[2] Petitioners reduced the value of the decedent's gross estate by $39,394.79 for principal commissions, of which respondent has placed in issue $39,000.

property to them. Decedent's interest in the Paris property was sold for a price of 200,000 francs, converted into a life annuity of 20,000 francs per year payable to decedent in quarterly installments for her lifetime. In the agreement, decedent reserved "a right of use and habitation for her lifetime and her personal benefit," such reservation being specific rooms of the building located on the Paris property. The portion of the Paris property with respect to which decedent reserved an exclusive life estate had a value equal to one-half of the entire Paris property.

By codicil dated February 26, 1957, to her last will and testament, decedent bequeathed 13/30ths of her residuary estate in trust "during the lives of my nephew, Joseph J. Almirall and his wife, Madeline, and the survivor of them, to collect and receive the income and profits therefrom and, after deducting the expenses of the trust which are properly payable out of income to pay the net income in quarterly installments or oftener to my nephew, Joseph J. Almirall, as long as he lives and upon his death to his said wife, Madeline, as long as she lives." On the death of the survivor of Joseph or Madeline, one-half of the trust principal was to be paid over to Joseph's living issue per stirpes. If there was no living issue, one-half of the trust principal was to be paid over to the then Archbishop of the Roman Catholic Archdiocese of New York to be used by him for religious, charitable, or educational purposes. On the date of decedent's death, she was survived by Joseph, age 65, and Madeline, age 53. As of that date, Joseph was in extremely poor health. Madeline and Joseph had no children, natural or adopted. Joseph died on July 20, 1968, without children then living. Decedent's last will and testament stated that it should be construed according to the laws of the State of New York.

### OPINION

The first issue is whether principal commissions payable to trustees of an inter vivos trust established by decedent are excludable (or deductible) from the value of assets transferred to decedent's estate upon her death. Section 2031 [3] states that the gross estate of a decedent shall be determined by including the value of all property at the time of death. Section 2033 [4] states that the gross estate shall include the

---

[3] All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise indicated.

SEC. 2031. DEFINITION OF GROSS ESTATE.

(a) GENERAL.—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

[4] SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

value of all property to the extent of the interest therein of the decedent at the time of death. Section 2053 [5] allows deductions for administration expenses of the estate.

In determining the gross estate, petitioners included the value of the assets of the inter vivos trust less the amount of trustees' commissions which they contend became payable on decedent's death. Respondent contends that the trust assets should not be reduced by such trustee commissions and that the estate is not entitled to any deduction for such amount under section 2053.

When assets of an inter vivos trust are includable in a deceased taxpayer's estate, it has been consistently held that trustee's commissions payable upon termination of the trust are either excludable from the gross estate or deductible as an expense of the estate under section 2053. *Haggart's Estate* v. *Commissioner*, 182 F. 2d 514 (C.A. 3, 1950); *Commissioner* v. *Davis*, 132 F. 2d 644 (C.A. 1, 1943), affirming 45 B.T.A. 52 (1941); *Emma Peabody Abbett*, 17 T.C. 1293 (1952); and *Elroy N. Clark*, 1 T.C. 663 (1943). Cf. *Estate of Marcellus L. Joslyn*, 57 T.C. 722 (1972); *Mary E. Burrow Trust*, 39 T.C. 1080 (1963), affd. 333 F. 2d 66 (C.A. 10, 1964). Since the effect of an exclusion from gross estate or a deduction would be the same, we do not decide whether trustee commissions are exclusions or deductions. See *Haggart's Estate* v. *Commissioner*, *supra*.

A trust will terminate at the end of the period fixed by the terms of the trust instrument. 4 Scott, Trusts, sec. 334 (3d ed. 1967). Also, when the term fixed by the terms of the trust instrument for the termination has arrived, it is the duty of the trustee to convey title to the trust property to the persons beneficially entitled to it. 4 Scott, Trusts, sec. 345 (3d ed. 1967). In this case, the trust instrument required that upon decedent's death, the trust property was to be paid over to the beneficiaries, namely, decedent's estate and two individuals. Upon decedent's death the trust, pursuant to its terms, terminated. Under the laws of the State of New York, trustees are entitled to commissions upon the termination and final distribution of a trust. N.Y. Civ. Prac. sec. 8005 (McKinney Supp. 1973). Under the authority of *Haggart's*

---

[5] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

    (1) for funeral expenses,

    (2) for administration expenses,

    (3) for claims against the estate, and

    (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

*Estate* v. *Commissioner*, *supra*, we hold that petitioner is entitled to exclude from the gross estate or deduct from the gross estate amounts due the trustees under the laws of the State of New York upon termination of the trust.[6]

Respondent, however, presents several arguments which we believe merit discussion. Respondent places great reliance upon the fact that the petitioners are both trustees of decedent's inter vivos trust and executors of decedent's estate. His position apparently is that the petitioners should be allowed only one set of commissions for their performance of duties as trustees and executors. However, under the laws of the State of New York, "double" commissions are allowable to persons acting as a trustee and executor as long as there is severance of duties as executor and trustee. *In Re Knoop's Will*, 283 N.Y. 267, 28 N.E. 2d 832 (1940); *In Re Willson's Estate*, 21 App. Div. 2d 937, 251 N.Y.S. 2d 399 (3d Dept. 1964). We do not understand respondent's position to be that petitioners did not perform their duties as trustees and executors, respectively, but merely that their duties as trustees and executors were similar and that the estate was made up essentially of assets transferred from the trust. The dual roles of petitioners did not affect the treatment or allowance of commissions paid in their capacities as trustees.

Respondent also argues that the final distribution of the trust property was not made until the trust property passed through the estate to the beneficiaries named in decedent's will. Therefore, the trustees of the inter vivos trust would not be entitled to commissions upon transfer of the property to the decedent's estate because the trust did not in fact terminate at that time. Respondent relies upon the cases of *In Re Burnham's Will*, 58 Misc. 2d 777, 296 N.Y.S. 2d 401 (Westchester County Surr. Ct. 1968), and *In Re Faroll's Estate*, 39 Misc. 2d 309, 240 N.Y.S. 2d 526 (N.Y. County Surr. Ct. 1963), which held that the payment of trust funds by a trustee to itself, to be continued in further trust under the same instrument, does not constitute a distribution or paying out of principal entitling the trustee to paying out commissions under New York law. Those cases are distinguishable because they dealt with merely a transfer of property from one trust to another, both trusts being established by one individual under one instrument. In the present case, decedent established a trust which was to terminate upon her death by payment of the bulk of the trust assets over to her estate. The distribution provisions of the trust instrument and the will presented two separate instruments under which the petitioners were required to perform duties in fiduciary capacities. Under

---

[6] Respondent did not challenge the computation of the proper amount of commissions payable to the trustees under New York law.

such circumstances, as we interpret New York law, the trustees of the trust would be entitled to commissions upon termination of the trust. See *In Re Culver's Will*, 294 N.Y. 321, 62 N.E. 2d 213 (1945).

Respondent's final contention was stated in his brief as follows: "Had the trust agreement expressly named the remainder beneficiaries, the trust property, which comprises more than 95% of the decedent's estate, would have passed to the remaindermen without probate, and the amount of executor's commissions allowable under State law and deductible under *Code*, § 2053 would have been correspondingly reduced." Respondent apparently contends that, since decedent could have arranged her estate in such a way that only one set of trustees' commissions would have been payable on the property placed in the trust (and deductible from the gross estate), the estate should be allowed to deduct (or exclude) only the lower amount. Respondent has not produced, nor have we found, any authority which requires a decedent to arrange her estate so as to produce the lowest amount of executor's commissions payable under State law and thus deductible from the gross estate for tax purposes. We reject respondent's attempt to, in effect, collapse the trust and the estate into one entity as being contrary to the facts. Decedent established a valid trust which terminated upon her death and on which, at that time, trustees' commissions became payable under State law.

The second issue involves the transfer of the Paris property from decedent to her nephews on February 27, 1963. In their brief, petitioners conceded that decedent made a gift to the extent the value of the property transferred exceeded the consideration received. In his brief, respondent conceded that in computing the value of the gift, allowance should be made for decedent's retention of the right to possess and occupy one-half of the Paris property for life. We make no further findings on this issue, noting as we do the concessions of the parties only because characterization of the transfer is germane to a determination of the third issue in this case.

The third issue is the determination of the value of decedent's retained interest in the Paris property to be included in her gross estate. Section 2036 [7] provides that a decedent's gross estate includes the value of any property she has transferred in which she retains the right to

---

[7] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

　(1) the possession or enjoyment of, or the right to the income from, the property, or
　(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

possession for life unless the transfer was for "adequate and full consideration in money or money's worth." Section 2043 [8] provides that, if a transfer falling within section 2036 (or certain other sections) is made for a "consideration in money or money's worth" but not "adequate and full consideration," there shall be included in the gross estate "only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent."

In the notice of deficiency, respondent determined that the estate is required to include the value of one-half of the Paris property as of decedent's death less the value of periodic payments received. Petitioner contends that less than one-half of the value of the Paris property should be included in decedent's estate because she retained less of an interest in the property than was owned prior to the transfer. As noted in discussion of the second issue above, the parties have agreed that the transfer of the Paris property was made for less than full and adequate consideration.

Prior to the transfer of the Paris property, decedent owned an undivided one-half interest. After the transfer, she retained a life interest in a specific portion of the Paris property which the parties have agreed had a value equal to one-half the value of the entire property. We need not get mired in the legal niceties of whether decedent's one-half undivided interest in the Paris property is equal to the life interest retained. Section 2036 has been interpreted broadly as referring to any donative transfer in which the deceased taxpayer has retained the enjoyment of property during his lifetime and as a section which reflects a "legislative policy of subjecting to tax all property which has been the subject of an incompete *inter vivos* transfer." *United States* v. *O'Malley*, 383 U.S. 627, 631 (1966); *McNichol's Estate* v. *Commissioner*, 265 F. 2d 667 (C.A. 3, 1959), affirming 29 T.C. 1179 (1958); *Estate of Marie J. Nicol*, 56 T.C. 179 (1971). In this case, decedent retained the right to possession of a specific portion of the Paris property. Petitioners presented no evidence to indicate that the retained interest was less than the interest given up. Since the parties have agreed that the retained life estate had a value equal to one-half of the entire property, we must assume that decedent retained an interest at least equal to the undivided one-half interest that she transferred. We

---

[8] SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION.

(a) IN GENERAL.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

therefore hold that decedent is required to include one-half of the value of the Paris property under section 2036, subject to a reduction for consideration received as stated in section 2043(a). With regard to section 2043, petitioner agrees that respondent properly took the periodic cash payments into account. Since petitioner does not contest the actual application of section 2043(a) by respondent, we make no finding with regard to this issue.

The fourth issue is whether the estate is entitled to a charitable deduction for the bequest of a remainder interest of the trust. Section 2055 [9] allows a deduction from a decedent's gross estate for the value of property transferred for certain charitable uses. With regard to a bequest which is subject to a condition, section 20.2055-2(b), Estate Tax Regs., states as follows:

> (b) *Transfers subject to a condition or a power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable.

On the date of decedent's death the charitable remainder bequest was subject to the condition that Joseph J. Almirall, alive as of this date, die without issue. Petitioners contend that the possibility that Almirall would die with issue was so remote as to be negligible and therefore the charitable bequest is allowable as a deduction. Respondent argues that, because Joseph Almirall could have adopted a child or children who would have defeated the remainder charitable interest, the possibility that the charitable transfer would become effective was not remote. Respondent makes no argument regarding the possibility of defeating the charitable remainder by virtue of the birth of children to the Almiralls.

Assuming arguendo that Almirall could legally adopt a child or adult and that such adopted person would prevent the remainder in

---

[9] SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.

(a) In General.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made before the date prescribed for the filing of the estate tax return)—

(1) * * *

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; * * *

question from passing to the charity, we must determine whether the happening of adoption in this case is so remote as to be negligible. In making such a determination, consideration must be given to all factors involved. *Estate of George M. Moffett*, 31 T.C. 541 (1958), affd. 269 F. 2d 738 (C.A. 4, 1959). The phrase "so remote as to be negligible" has been defined as a chance which every dictate of reason and common-sense would justify an intelligent person in disregarding as so highly improbable or remote as to be lacking in reason and substance. *United States* v. *Provident Trust Co.*, 291 U.S. 272 (1934); *Estate of Amelia B. Woodworth*, 47 T.C. 193 (1966).

As of decedent's death, Almirall was 65 years old and his state of health was extremely poor. The physician who attended Almirall from 1963 to 1966 testified:

Mr. Almirall could not walk about alone; he could not lift anything; he could not move anything. He was unable to do practically anything that a normal man of his age could do. For all intents and purposes, he was actually a neurological cripple.

The physician also testified that he would have counseled against Almirall's appearance in any adoption proceeding. Thus, even if Almirall had been inclined to adopt a child or adult, his age and poor health made even the simple task of appearing at an adoption proceeding a remote possibility. Also the Almiralls had been married for a period over 28 years without adopting. Without foreclosing the possibility that the right to adopt might, under certain circumstances, prevent the deduction of a conditional charitable bequest, we find that because of Joseph Almirall's age and state of health, the possibility that he would adopt and thereby defeat the charitable remainder interest was so remote as to be negligible. We hold for petitioner on this issue.

*Decisions will be entered under Rule 155.*