ESTATE of C. C. CHOFFIN, Deceased,
by Atlantic National Bank of West
Palm Beach, Executor, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 520–62.

United States District Court
S. D. Florida.
Aug. 13, 1963.

Hugh R. Dowling, Jacksonville, Fla., James E. Bennett, Jr., Youngstown, Ohio, for plaintiff.

Edith House, Asst. U. S. Atty., Lavinia Redd, Asst. U. S. Atty., Miami, Fla., for defendant.

CHOATE, District Judge.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the court, upon consideration, makes the following:

### FINDINGS OF FACT

1. The plaintiff, Atlantic National Bank of West Palm Beach, is a national banking institution organized and exist-ing under the laws of the United States and has its principal offices and place of business in the City of West Palm Beach, Palm Beach County, Florida.

2. The plaintiff filed this action in its capacity as executor of the estate of C. C. Choffin, deceased, to recover estate taxes, together with the interest thereon, in the aggregate amount of $21,539.32, paid to the defendant by the plaintiff.

3. C. C. Choffin died on June 30, 1956, a resident of the State of Florida, leaving a last will and testament dated April 11, 1952, which was duly admitted to probate in the County Judge's Court in and for Palm Beach County, Florida. On July 12, 1956, the aforesaid County Judge's Court issued letters testamentary to the plaintiff, as executor of the last will and testament of C. C. Choffin, and the plaintiff ever since has been, and still is, qualified and acting as such.

4. The plaintiff filed the estate tax return for the estate of C. C. Choffin on September 25, 1957, in which no tax was shown to be due. Upon audit of said return, the Commissioner of Internal Revenue determined an estate tax deficiency of $63,934.68 and thereafter assessed said amount and $5,796.16 in interest against the estate. Said amounts were paid on April 13, 1959, and July 2, 1959, respectively. On March 4, 1960, the plaintiff filed a claim for refund of $21,-539.32 of the amount so paid ($19,748.31 in tax and $1,791.01 in interest). The Commissioner disallowed the claim by certified mail notice on March 21, 1961, and this action, wherein the plaintiff further seeks the recovery of the $21,539.32, was timely filed on October 15, 1962.

5. The basic amount in controversy ($19,748.31) constitutes taxes paid by the plaintiff for the estate on an amount which the plaintiff, in effect, maintains was bequeathed under Choffin's will to a qualified charity and which the plaintiff further maintains, contrary to the determination of the Commissioner, was properly deductible from Choffin's gross estate as a charitable contribution under Section 2055 of the Internal Revenue

Code of 1954, and therefore not subject to estate taxes.

6. In his will, after providing for the payment of his debts and taxes and the expenses incurred in the administration of his estate and after making certain specific bequests, Choffin bequeathed the residue of his estate in trust, directing (1) that the trustees determine and set aside, as soon as the residuary estate came into their hands, the amount thereof necessary to purchase refund annuity contracts that would provide monthly payments of $750 and $500 for life to his wife, Mayme, and his sister, Rose, respectively, and (2) that the balance of the residuary estate not required to purchase the refund annuity contracts be used for charitable purposes. Any refund under the contracts at the death of the respective beneficiaries was also to be used for charitable purposes.

7. On April 16, 1957, the trustees under Choffin's will, pursuant to the provisions of said will, purchased two cash refund annuity contracts from the Manufacturer's Life Insurance Company of Toronto, Canada (a company which regularly engages in the sale of such contracts), for premiums of $126,422 and $78,740, respectively. The first contract provided that Choffin's wife, Mayme, was to be paid the sum of $750 per month, commencing on the 10th day of May, 1957, for the remainder of her life, and also pursuant to which the excess of the purchase price paid over the sum of the annuity payments made to her until the time of her death was to be paid in one sum to the trustees for the benefit of a qualified charity. Both contracts were identical in the foregoing respects, except that the second provided that Choffin's sister, Rose, was to be paid $500 per month.

8. Choffin's wife, Mayme, was born on June 23, 1886, and his sister, Rose, was born on November 21, 1883. On April 16, 1957, the date that the annuity contracts were entered into, the parties to the said contracts understood the ages of Mayme and Rose to be 70 and 73 years, last birthdays, and the parties to this action had agreed that those ages may be used for the purpose of actuarially determining the probability that Mayme and Rose may live the number of years necessary to render ineffective the refund feature of the respective contracts.

9. $205,162 was the total of the premiums paid to the Manufacturer's Life Insurance Company for the two refund annuity contracts purchased for Mayme and Rose's benefit. These same contracts, without refund features, could have been purchased from the same company for total premiums of $165,875.

10. In effect, it is the position of the plaintiff that Choffin's estate was entitled to a charitable deduction under Section 2055 of the Internal Revenue Code of 1954 in the amount of $205,162, the cost of the refund annuity contracts purchased by the trustees, reduced (1) by the value of Mayme and Rose's life interest therein, or (2), in the alternative, by the cost of non-refund annuity contracts that could have been purchased by the trustees and which would have provided the same life benefits to Mayme and Rose as those actually purchased.

11. It is the position of the defendant that Choffin's estate is not entitled to deduct as a charitable bequest any part of the $205,162 paid for the annuity contracts because the chances of Mayme and Rose's surviving long enough to receive sufficient payments to render ineffective the refund feature of the contracts are not so remote as to be negligible.

12. On June 30, 1956, the date of Choffin's death, the combined value of Mayme and Rose's right to receive payments of $750 and $500 per month, respectively, for the remainder of their lives was $113,180.60. On that date, the value of Mayme's right was $71,499.04 and the value of Rose's right was $41,-681.56.

13. If, after June 30, 1956, Mayme lives 14.05 years and Rose lives 13.12 years the sum of the monthly payments made to them during those years under the respective contracts will equal the cost of the contracts and the refund fea-

tures thereof will have been rendered ineffective.

14. Using U.S. Life Table 38, U.S. Life Table 6, the 1937 Standard Annuity Table (Female) and the a–1949 Table (Female), the probability that Mayme at age 70 will survive 14 years is 26.6%, 29.2%, 49.6% and 51.4%, respectively. Using the same tables, the probability that Rose at age 73 will survive 13 years is 21.9%, 24.0%, 45.7% and 44.8%, respectively.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this cause by virtue of 28 U.S.C. 1346(a) (1).

2. The construction of a written instrument is a question of law. Crabb v. Commissioner, 121 F.2d 1015 (C.A.5th).

■ 3. Where the beneficial enjoyment of a testamentary gift to a charity is, on the date of the testator's death, dependent upon the performance of some act or the happening of a precedent event, the testator's estate is not entitled to a deduction for the gift unless the possibility that the contemplated benefits of the gift will not be enjoyed by the charity is so remote as to be negligible. Treasury Regulations on Estate Tax (1954 Code), Section 20–2055–2.

■ 4. Where a charity is bequeathed any possible refund under cash refund annuity contracts and there is greater than a 20% chance that the annuitants under those contracts will live long enough to preclude any refund, the probability that the charity will not receive the beneficial enjoyment of the gift is not so remote as to be negligible. Florida National Bank of Jacksonville, Exr. v. United States, (S.D.Fla.) decided May 21, 1962 (10 A.F.T.R. 6179); United States v. Dean, 224 F.2d 26 (C.A.1st); Moffett's Estate v. Commissioner, 269 F. 2d 738 (C.A.4th).

■ 5. The estate of C. C. Choffin is not entitled to a deduction for the bequest here under consideration because the possibility that the charity will never receive the beneficial enjoyment of the bequest is not so remote as to be negligible.

6. Judgment should be entered in favor of the defendant.

## OPINION

The question before the court is basically whether or not the provisions of sub-paragraph (a) alone or those of sub-paragraph (b) of Treas.Reg.Sec. 20–2055–2 also govern the interests in certain annuities purchased at the direction of the plaintiff's testator.

The court agrees with the plaintiff that the only interest conveyed to the private beneficiaries was the right to receive certain income from the annuities for the rest of their natural lives. As this court views the matter, the beneficial interest in the refund feature of the annuities vested immediately in the charity.

The will designated a transfer of property for both a charitable and a private purpose. The beneficial interest of the charity was (at time of purchase) severable and presently ascertainable. The total cost of the annuities was $205,162.-00. Of this amount $165,875.00 was attributable to the life income furnished the private beneficiaries and $39,287.00 was attributable to the refund interest vested in the charity.

This leaves only the question of whether or not the possibility that the charitable transfer will not become effective is "so remote as to be negligible." We believe that it is conceded that the government has established by authority and mortality tables that the chance that either of the private annuitants will live long enough to eliminate the refund provisions is not so remote as to be negligible. Thus, the decision must turn on an interpretation of the requirement imposed by the words, *effective charitable transfer*. The crux of the controversy is whether an effective charitable transfer necessitates (1) only that a legal interest with a presently ascertainable value vest, or (2) whether there must be a practical certainty that the charity ultimately receive the contemplated financial benefit.

**38**

If the question is decided in favor·of the former proposition, the plaintiff should prevail. If the answer requires the latter, the Director of Internal Revenue should be upheld.

The court determines that the latter answer is required. The word *effective* requires in our view a decision that the enjoyment of the benefits of the transfer must accrue in fact to the charitable beneficiary. Although the charity received a present vested legal interest with an ascertainable value, the enjoyment thereof is dependent upon the condition of the life span of the private beneficiaries. The chance of such survival wiping out the refund feature of the annuity is admittedly more than negligible, and therefore the Collector's position must be sustained. Perhaps the rule is harsh, but it is not for this court to change it. Judgment will be entered in accordance herewith.